JS 44 (Rev. 12/07) (CAND Rev 1/10)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS

Alpha Investment, LLC

## DEFENDANTS

Zynga Inc. and Andrew Trader

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Gerald E. Hawxhurst (Bar No. 220327), Joshua P. Gelbart (Bar No. 274021)
CRONE HAWXHURST LLP
10880 Wilshire Blvd., Suite 1150
Los Angeles, CA 90024

Attorneys (If Known)

Scott Vick, VICK LAW GROUP | A Professional Corporation
Jeffrey Kaban, Cooley LLP

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question (U.S. Government Not a Party) |
| ☒ 2 U.S. Government Defendant | ☒ 4 Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☒ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury — | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☒ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | & Disclosure Act | | ☐ 892 Economic Stabilization Act |
| | | | ☐ 740 Railway Labor Act | | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | ☐ 870 Taxes (U.S. Plaintiff | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | or Defendant) | Act |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party | ☐ 900 Appeal of Fee |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | 26 USC 7609 | Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | **IMMIGRATION** | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus – | | ☐ 950 Constitutionality of |
| | Other | | Alien Detainee | | State Statutes |
| | ☐ 440 Other Civil Rights | | ☐ 465 Other Immigration | | |
| | | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

| | |
|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Appeal to District Judge from Magistrate Judgment |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. § 1332
Brief description of cause:
Mandatory injunction; declaratory judgment; intentional interference w/ econ advantage; breach of k; tort. interference w/ k

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $ > $75,000

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE
"NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)

☒ SAN FRANCISCO/OAKLAND      ☐ SAN JOSE      ☐ EUREKA

DATE
07/15/2011

SIGNATURE OF ATTORNEY OF RECORD



Gerald E. Hawxhurst (Bar No. 220327)
  jerry@cronehawxhurst.com
Joshua P. Gelbart (Bar No. 274021)
  jgelbart@cronehawxhurst.com
CRONE HAWXHURST LLP
10880 Wilshire Blvd., Suite 1150
Los Angeles, California 90024
Telephone:    (310) 893-5150
Facsimile:    (310) 893-5195

Jacob S. Pultman (*Pro Hac Vice Forthcoming*)
  jacob.pultman@newyork.allenovery.com
Andrew H. Reynard (*Pro Hac Vice Forthcoming*)
andrew.reynard@newyork.allenovery.com
Molly C. Spieczny (*Pro Hac Vice Forthcoming*)
  molly.spieczny@newyork.allenovery.com
ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399

Attorneys for Plaintiff
Alpha Investment, LLC

**C V   11   3 5 0 0**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

ALPHA INVESTMENT, LLC,

      Plaintiff,

      v.

ZYNGA INC. and ANDREW TRADER,

      Defendants.

CASE NO.

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

FILED
JUL 15 2011
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
E-filing

COMPLAINT

Plaintiff Alpha Investment, LLC ("Alpha"), by and through its attorneys, for its complaint against defendants Zynga Inc. ("Zynga") and Andrew Trader ("Trader"), alleges the following upon knowledge as to its own actions and upon information and belief for the remainder of the complaint:

## NATURE OF THE ACTION

1.      In August 2010, Alpha entered into a Stock Purchase Agreement (the "August SPA") with Trader to acquire one million shares of Class A Common stock of Zynga (the "Shares") with a purchase price of $12.87 per share.

2.      In or around November 2010, at Zynga's request, Alpha entered into a revised Stock Purchase Agreement (the "November SPA") with Trader to add specific terms requested by Zynga for the acquisition of these Zynga Shares by Alpha at the same price per share.

3.      This action arises from Zynga's deliberate and wrongful efforts to impose improper and unlawful restrictions on the Shares that Alpha contracted to purchase under the August SPA and then under the November SPA and Zynga's wrongful refusal to register the Shares in Alpha's corporate name. Zynga's wrongful and unreasonable conduct is interfering with Alpha's rights and its opportunity to purchase, own and hold the Shares, and to hold those Shares free from unwarranted transfer restrictions.

4.      Since the signing of the August SPA and the associated escrow agreement between Alpha and Trader (the "Escrow Agreement"), approximately $12.87 million of Alpha's capital has been held in an escrow account for purchase of the Shares, but Alpha has been deprived of the bargained-for benefit of its contract with Trader because Zynga has improperly refused to allow the stock sale to proceed. Zynga has continuously and unreasonably refused to recognize the stock transfer and to register the Shares in the name of Alpha without any valid justification.

5.      Zynga's intentional interference has prevented Alpha from realizing the bargained-for benefits of its agreements with Trader, *i.e.*, the opportunity to purchase, own and hold the Shares, and to hold those Shares free from unwarranted transfer restrictions. Alpha is entitled to receive these benefits given its negotiation of and entry into the August SPA and the November

- 1 -
COMPLAINT

1  SPA with Trader, and Alpha's compliance with all of the requirements set forth in these
2  agreements.

3      6.      Indeed, Alpha has complied with all of the requirements under each of the August
4  SPA and the November SPA for transfer of the Shares from Trader to Alpha. Upon information
5  and belief, Trader has also complied with the requirements under both the August SPA and the
6  November SPA to transfer the Shares from Trader to Alpha, including the requirement that Trader
7  provide a legal opinion to Zynga representing that the offer and sale of the Shares complies with
8  applicable federal and state securities laws, such that Zynga has no basis to withhold its consent to
9  the registration of the Shares in Alpha's corporate name.

10     7.      Alpha therefore seeks a mandatory injunction requiring Zynga to (i) accept the
11 legal opinion that, upon information and belief, was provided to Zynga by Trader, (ii) register the
12 Shares in Alpha's corporate name, and (iii) issue and deliver to Alpha a duly executed stock
13 certificate evidencing the Shares in Alpha's corporate name. In addition, Alpha seeks damages
14 against Zynga for its improper interference with Alpha's agreements with Trader.

15     8.      Alternatively, in the event that Trader is found to have failed to perform his
16 contractual obligations under the November SPA, and thereby prevented Alpha from obtaining the
17 Shares, Alpha seeks specific performance of all of Trader's obligations under the November SPA,
18 in addition to the relief Alpha seeks from Zynga.

19     9.      Further, and also in the alternative, if for any reason the November SPA is found to
20 be unenforceable and in the event that Trader is found to have failed to perform his contractual
21 requirements under the August SPA, Alpha seeks specific performance of all of Trader's
22 obligations under the August SPA, in addition to the relief Alpha seeks from Zynga.

23                                      **PARTIES**

24     10.     Alpha Investment, LLC is a limited liability corporation organized under the laws
25 of Abu Dhabi with an address at P.O. Box 186, Abu Dhabi, United Arab Emirates. Alpha is a
26 citizen of Abu Dhabi.

27     11.     Defendant Zynga Inc. is a private Delaware corporation and has its principal place
28 of business at 365 Vermont Street, Suite A, San Francisco, California 94103.

1    12.    Defendant Andrew Trader is a resident and citizen of California.

2    **JURISDICTION, VENUE AND APPLICABLE LAW**

3    13.    This Court has subject matter jurisdiction over this action pursuant to, *inter alia*, 28

4    U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000,

5    exclusive of interest and costs of suit.

6    14.    This Court has personal jurisdiction over Zynga because Zynga has its principal

7    place of business in California.

8    15.    This Court has personal jurisdiction over Trader because Trader is a citizen of

9    California and because Trader contractually consented to the jurisdiction of this Court in the

10   August SPA and in the November SPA.

11   16.    Venue lies in this district pursuant to 28 U.S.C. § 1391(a) and (c) because (i) both

12   Zynga and Alpha reside in this district; (ii) a substantial portion of the events or omissions giving

13   rise to this action occurred within this district; and (iii) Trader contractually consented to venue in

14   this district in both the November SPA and in the August SPA.

15   17.    Both the August SPA and the November SPA provide that they are governed by

16   and shall be construed in accordance with California law, without giving effect to that body of

17   laws pertaining to conflict of laws.

18   **INTRADISTRICT ASSIGNMENT**

19   18.    This civil action arises in the County of San Francisco, in which a substantial part

20   of the events or omissions which give rise to the claims in this action occurred, and it is where

21   Zynga has its principal place of business and Trader resides.   Therefore, pursuant to Civil Local

22   Rule 3-2(d), this action should be assigned to the San Francisco Division or the Oakland Division

23   of this Court.

24   **FACTUAL ALLEGATIONS**

25   A.    **Zynga**

26   19.    Zynga is a social network gaming company. It develops browser-based games as

27   applications on social networking websites such as Facebook and MySpace, as well as stand-alone

28   browser-based games. Some of its most popular games include CityVille, FarmVille, and Mafia

1 Wars. Upon information and belief, Zynga has more than 215 million active monthly users and 50
2 million active daily users.

3      20.    Zynga was formed as a limited liability company under the name Presidio Media
4 LLC in California on or about April 19, 2007. It was converted to a Delaware corporation named
5 Presidio Media Inc. on or about October 25, 2007. Thereafter, the corporation was renamed
6 Zynga Game Network Inc. on or about February 11, 2008, and was later renamed Zynga Inc. on or
7 about November 17, 2010.

8      21.    According to the Fourteenth Amended and Restated Certificate of Incorporation of
9 Zynga Inc., filed on or about April 18, 2011, Zynga is a private corporation with shares of
10 authorized common stock numbering 1,019,092,724 and shares of authorized preferred stock
11 numbering 399,822,180. Of Zynga's shares of authorized common stock, 998,575,252 shares are
12 designated "Class A Common Stock."

13      22.    Through its entry into the August SPA and the November SPA, Alpha sought to
14 invest in Zynga.

15      23.    On July 1, 2011, Zynga filed with the United States Securities and Exchange
16 Commission a Form S-1 Registration Statement and, upon information and belief, it intends to file
17 an initial public offering ("IPO") in the next several months.

18 **B.    Andrew Trader**

19      24.    Trader is a co-founder of Zynga and former employee of Zynga who owns shares
20 of Class A Common Stock in Zynga pursuant to a Stock Option Agreement and Stock Option
21 Exercise Agreement, dated on or about January 3, 2008 (the "Binding Stockholder Agreements"),
22 between Zynga and Trader.

23      25.    The Binding Stockholder Agreements provided that Zynga had a right of first
24 refusal (the "Right of First Refusal") for any proposed sale of Trader's shares for a period of 30
25 days from the time Zynga was given notice of the terms of the sale.

26 **C.    SecondMarket**

27      26.    Nonparty SecondMarket, Inc. ("SecondMarket") is an online marketplace for, *inter*
28 *alia*, stock in a variety of high growth private companies. It provides a private environment for

1  early investors and employee shareholders to sell their shares prior to a company's initial public

2  offering or other liquidity event. According to SecondMarket's Private Company Report for the

3  third quarter of 2010, SecondMarket has facilitated transactions in private company stock of

4  companies including Zynga, Facebook, and Twitter, among others.

5      27.    Through the private marketplace forum provided by SecondMarket, Alpha and

6  Trader were introduced in the summer of 2010 and began exploring the potential purchase and

7  sale of Trader's shares in Zynga, the relevant terms of which were negotiated and set forth in the

8  August SPA and the November SPA.

9  **D.    The August Stock Purchase Agreement and Escrow Agreement**

10      28.    On or about August 26, 2010, Alpha and Trader entered a Stock Purchase

11  Agreement (as defined above, the "August SPA"), pursuant to which Alpha agreed to purchase

12  from Trader 1,000,000 shares of Zynga Class A Common Stock (as defined above, the "Shares")

13  for $12.87 per share and an aggregate price of $12,870,000.

14      29.    On the same date, Alpha, Trader and SecondMarket entered into an Escrow

15  Agreement (as defined above, the "Escrow Agreement"), pursuant to which Alpha agreed to place

16  approximately $12,870,000 in escrow (with SecondMarket as escrow agent) for its purchase of the

17  Shares from Trader.

18      30.    The August SPA provided, *inter alia*, that Alpha agreed to be bound by and comply

19  with the limitations on transfer of the Shares set forth in the Binding Stockholder Agreements.

20  Such limitations on transfer did not include any restrictions or prohibitions on Alpha's ability to

21  transfer or sell the Shares beginning on the date of Alpha's acquisition of the Shares and prior to

22  the effective date of an initial public offering of Zynga's common stock.

23      31.    The August SPA also provided that the sale of the Shares from Trader to Alpha was

24  subject to Zynga's Right of First Refusal and that, pursuant to that Right of First Refusal, Trader

25  would provide Zynga with notice of the proposed transfer upon execution of the August SPA.

26  **E.    Trader Provides Notice to Zynga**

27      32.    On or about August 26, 2010, Trader provided Zynga and counsel for Zynga with a

28  Notice of Proposed Transfer (the "Notice") that set forth the terms of the agreement between

1  Alpha and Trader and formally provided Zynga with (i) notice of the proposed sale of the Shares

2  pursuant to the August SPA and (ii) the opportunity for Zynga to exercise its Right of First

3  Refusal for purchase of the Shares.

4      33.    The Notice provided, in relevant part:

5          I acknowledge that this Notice is an offer to sell the Offered Shares

6          to the Company [Zynga] and/or its assignee(s) pursuant to the

7          Company's Right of First Refusal at the Offered Price.

8          The Company and/or its assignee(s) shall have 30 days from the

9          date of this Notice to provide written notice to me if they elect to

10          exercise their respective Right of First Refusal.

11      34.    On or about August 26, 2010, David Kinitsky ("Kinitsky"), an employee of

12  SecondMarket, sent an email to Zynga and its outside counsel attaching the August SPA and the

13  Notice.

14  **F.     Zynga Recognized the Contract between Alpha and Trader**

15      35.    On or about August 26, 2010, Karyn Smith ("Smith"), Deputy General Counsel for

16  Zynga, responded to Kinitsky's email as follows: "Duly noted. We will advise you by September

17  25 regarding our intention to exercise our right of first refusal on these shares."

18      36.    More than 30 days passed and Zynga did not exercise its Right of First Refusal.

19  During the period between August 26, 2010 and September 25, 2010, Zynga did not contact Alpha

20  or SecondMarket.

21      37.    On or about September 26, 2010, Kinitsky emailed Zynga and its outside counsel,

22  noting that the Right of First Refusal period had expired. Kinitsky requested that Zynga confirm

23  that it had waived its Right of First Refusal and send "any and all final closing materials" so that

24  the transfer of the Shares between Trader and Alpha could be completed.

25      38.    On or about September 27, 2010, Smith responded, stating that Zynga had decided

26  not to exercise its Right of First Refusal with respect to the Shares. Smith noted that Zynga's

27  outside counsel, Brian Erb of Ropes & Gray LLP ("Erb"), would thereafter communicate with

28

1  SecondMarket "regarding the documentation required to complete this transfer" of shares from
2  Trader to Alpha.

3  **G.    Zynga Makes a Series of Unjustified Demands for the Imposition of Improper**
4  **Restrictions on the Sale of Shares**

5       39.     On or about September 29, 2010, Zynga, through its counsel Erb, sent an email to
6  SecondMarket, Alpha and Trader, attaching an alternative form of a Stock Purchase Agreement, as
7  well as a Representation Letter and Stock Transfer Instructions.

8       40.     These documents, specifically the Representation Letter, purported to impose
9  additional restrictions on the sale of the Shares from Trader to Alpha beyond those in the August
10  SPA, the Binding Stockholder Agreements, Zynga's Tenth Amended and Restated Certificate of
11  Incorporation then in effect and, upon information and belief, Zynga's own bylaws then in effect.
12  In particular, unlike the August SPA, the additional restrictions provided that Alpha was
13  prohibited from selling or transferring the Shares from the moment it acquired them, *i.e.*,
14  beginning on the date of its acquisition of the Shares, until the later of (i) 180 days after the initial
15  public offering of Zynga's common stock or (ii) the termination date of a market standoff
16  agreement contained in the Binding Stockholder Agreements that restricts the sale of Zynga shares
17  for a limited period of time after Zynga's IPO.

18       41.     The Representation Letter proposed by Zynga in Erb's September 29, 2010 email
19  provided, in relevant part:

20            In connection with the proposed sale of the Shares pursuant to the
21            [Stock Purchase] Agreement, the undersigned, Purchaser and Seller,
22            hereby represent and warrant to, and agree with, the Company as
23            follows: . . .

24            (v)     without limiting the foregoing, Purchaser hereby
25            acknowledges and agrees that the Shares will be subject to
26            resale restrictions which prohibit the transfer or sale of the
27            Shares at any time during the period beginning on the date of
28

1    acquisition by Purchaser and ending on the later of (a) 180

2    days after the effective date of the initial public offering of

3    the Company's common stock or (b) the date on which the

4    market stand-off agreement referenced in clause (iv) above

5    terminates; Purchaser acknowledges that the certificate

6    evidencing the Shares will bear a legend to the foregoing

7    effect; Purchaser shall enter into any agreement reasonably

8    required by the Company to implement the foregoing.

9        42.    In addition, the Stock Transfer Instructions proposed by Zynga in its email of

10   September 29, 2010 provided that the alternative form of Stock Purchase Agreement, which

11   referenced the proposed Representation Letter containing the improper restrictions, was "the only

12   form of Stock Purchase Agreement that will be accepted by Zynga in connection with the sale of

13   your shares." Zynga's newly imposed, improper and wrongful restrictions were consistent with

14   the clear message Zynga later delivered to Trader—that under no circumstances would Zynga

15   permit the transaction with Alpha to be accomplished.

16   **H.    Alpha Requests that Zynga Remove the Additional Restrictions**

17       43.    Upon reviewing the transfer restrictions in the form of section (v) of the

18   Representation Letter proposed by Zynga as set forth above, counsel for Alpha advised

19   SecondMarket and counsel for Zynga that Alpha would not agree to be bound by restrictions that

20   were not contained in existing agreements between Zynga and Trader, namely the Binding

21   Stockholder Agreements, that were not otherwise legally required, or that were outside of market

22   norms.

23       44.    Specifically, Alpha indicated its objection to the language in section (v) of the

24   proposed Representation Letter providing that Alpha was prohibited from selling or transferring

25   the Shares from the moment it acquired them, *i.e.*, beginning on the date of acquisition of the

26   Shares, until the later of (i) 180 days after the initial public offering of Zynga's common stock or

27   (ii) the termination date of a market standoff agreement contained in the Binding Stockholder

28

1  Agreements.

2      45.      On or about November 9, 2010, Kinitsky sent Zynga's counsel an email expressing
3  Alpha's views on these issues and requesting that section (v) of the proposed Representation
4  Letter be removed.  The email stated that section (v) of the Representation Letter "was a novel
5  restriction on the shares not present in [Trader's] hands," and that "[i]mposing such a restriction, if
6  enforceable, within a Representation Letter allows the company to apply it selectively."  Kinitsky
7  further stated that Alpha "finds the provision unacceptable."  On Alpha's behalf, Kinitsky
8  proposed execution of a version of the Representation Letter without these improper restrictions.

9      46.      On or about November 12, 2010, Kinitsky sent a follow-up email to counsel for
10  Zynga asking if he had discussed the provision with Zynga.

11  **I.      Zynga Refuses Alpha's Proposed Representation Letter**

12      47.      On or about November 17, 2010, Erb, as counsel for Zynga, responded that, "to the
13  extent the transfer restrictions are contained in Zynga's constitutional documents, it's irrelevant
14  whether or not that provision is in the representation letter in the form of an agreement on the
15  buyer's part."  Erb also stated that, "[n]otwithstanding your or buyer's counsel view, Zynga is
16  perfectly comfortable that this provision is enforceable."

17      48.      Neither Zynga nor Erb provided Alpha with any basis for the restrictions under
18  California or Delaware law or in Zynga's then-existing Certificate of Incorporation.  Nor did
19  Zynga provide Alpha with any bylaw restrictions to this effect.

20      49.      Kinitsky responded, again on November 17, 2010, asking Erb which of Zynga's
21  constitutional documents contained the transfer restrictions at issue.  Erb replied that same day,
22  stating that the restrictions were contained in Zynga's bylaws.  Neither Erb nor Zynga has
23  provided Alpha with Zynga's bylaws.  Upon information and belief, Zynga's bylaws contained no
24  such restrictions.

25  **J.      Alpha's Compliance with the November SPA**

26      50.      On or about November 23, 2010, Alpha signed and executed (i) the Stock Purchase
27  Agreement in the form that Zynga had provided on September 29, 2010 (as defined above, the
28  "November SPA") and (ii) a signed Representation Letter that omitted the unreasonable and

1   improper language of Section (v) regarding transfer restrictions and added a new Section (viii), by

2   which Trader agreed to indemnify Zynga for any losses incurred by Zynga arising out of a

3   determination that SecondMarket's or Trader's activities had violated federal or California

4   securities laws (the "November Representation Letter").

5       51.    On or about November 23, 2010, Alpha, through its counsel, delivered to

6   SecondMarket electronic versions of Alpha's signatures of the November SPA and the November

7   Representation Letter. On or about November 30, 2010, Alpha, through its counsel, delivered to

8   SecondMarket the original versions of Alpha's signatures of each of these agreements

9       52.    Section 2.3 of the November SPA provided as follows:

10          Deliveries by Purchaser.  Prior to the Closing Date, Purchaser shall

11          deliver (a) to Seller, payment of the Total Purchase Price by check

12          or wire transfer of funds for the benefit of Seller in accordance with

13          Seller's instructions; (b) to Seller and the Company, a duly executed

14          copy of this Agreement; and (c) to the Company, any other

15          agreement or document reasonably required by the Company in

16          connection with the transfer of the Shares.

17      53.    Alpha satisfied all of the requirements of Section 2.3 of the November SPA.  In

18  particular: (i) in August 2010, pursuant to the Escrow Agreement, Alpha placed approximately

19  $12,870,000 in escrow for its purchase of the Shares from Trader; (ii) in November 2010, Alpha

20  delivered executed copies of the November SPA and the November Representation Letter to

21  SecondMarket; and (iii) upon information and belief, on or about November 30, 2010,

22  SecondMarket delivered the November SPA and the November Representation Letter to Trader,

23  who executed and delivered them to Zynga.  Alpha has therefore satisfied all of its obligations for

24  consummating its purchase of the Shares from Trader under the November SPA and has satisfied

25  any and all other obligations for consummating that purchase.

26      54.    To the extent that Zynga had sought to require that Alpha sign and deliver a form

27  of Representation Letter that would have imposed restrictions on transfer of the Shares beginning

28  on the date that Alpha acquired the Shares, such a requirement was improper and unreasonable,

1    and Alpha is therefore excused from delivering such a form of Representation Letter. Alpha has

2    therefore satisfied all of its obligations for consummating its purchase of the Shares from Trader

3    under the November SPA and has satisfied any and all other obligations for consummating that

4    purchase .

5    **K.    Trader's Compliance with the November SPA**

6        55.    Upon information and belief, on or about November 30, 2010, Trader delivered to

7    Zynga an electronic closing package containing the materials Trader was required to provide to

8    Zynga under the November SPA.

9        56.    Section 2.2 of the November SPA provided as follows:

10            Deliveries by Seller.  Prior to the Closing Date, Seller shall deliver

11            (a) to Purchaser and the Company a duly executed copy of this

12            Agreement; and (b) to the Company (i) the original stock

13            certificate(s) representing the Shares and the Stock Certificate

14            Number(s) set forth on Exhibit A hereto (the *"Stock Certificate*

15            *Number(s)"*), (ii) a duly executed Stock Power and Assignment

16            Separate from Stock Certificate in the form attached hereto as

17            Exhibit B, (iii) a duly executed copy of the Representation Letter in

18            the form attached hereto as Exhibit C (the *"Representation Letter"*),

19            (iv) an opinion in form and substance satisfactory to the Company

20            from counsel to the Seller satisfactory to the Company that states

21            that the offer and sale of the Shares is being made pursuant to Rule

22            144 of the Securities Act of 1933, as amended (the *"Act"*), and will

23            be in compliance with all applicable federal and state securities

24            laws; (v) any stock transfer fee, stock handling fee, stock certificate

25            exchange or registration fee, or the like required by the Company;

26            and (vi) any other agreement or document reasonably required by

27            the Company in connection with the transfer of the Shares.

28        57.    Additionally, Section 3 of the Stock Transfer Instructions proposed by Zynga in its

1 | email of September 29, 2010 provided, *inter alia*, as follows:

2 |     Pursuant to Section 2.2 of the Stock Purchase Agreement, you must

3 |     obtain a legal opinion that states that the offer and sale of your

4 |     shares is being made pursuant to Rule 144 of the Securities Act of

5 |     1933, as amended, and will be in compliance with all applicable

6 |     federal and state securities laws.  A draft of such opinion should be

7 |     forwarded to our outside legal counsel, Ropes & Gray LLP . . . .

8 |     58.    Upon information and belief, Trader has satisfied all of the requirements of Section

9 | 2.2 of the November SPA and the requirements contained in Zynga's Stock Transfer Instructions.

10 | In particular, upon information and belief, on or about November 30, 2010, Trader delivered to

11 | Zynga: (i) duly executed copies of the November SPA; (ii) the original stock certificates

12 | representing the Shares and their corresponding Stock Certificate Numbers; (iii) a duly executed

13 | Stock Power and Assignment; (iv) a legal opinion from TroyGould PC stating that the offer and

14 | sale of the Shares is being made pursuant to Rule 144 of the Securities Act of 1933, as amended,

15 | and will be in compliance with all applicable federal and state securities laws (the "TroyGould PC

16 | Legal Opinion"); and (v) any stock transfer fee, stock handling fee, stock certificate fee, stock

17 | certificate exchange or registration fee, or similar fee required by Zynga.  Upon information and

18 | belief, Trader has therefore satisfied all of its obligations for consummating its sale of the Shares

19 | to Alpha under the November SPA.

20 | **L.**    **Zynga Unreasonably Refuses to Allow the Transfer of Shares from Trader to Alpha**

21 |     59.    On or about December 22, 2010, Kinitsky emailed counsel for Alpha, explaining

22 | that "the message we [SecondMarket and Trader] are receiving from Zynga is that they are simply

23 | not going to let any transfer take place here."

24 |     60.    Zynga refused to allow the transfer of shares from Trader to Alpha to take place

25 | despite having received the TroyGould PC Legal Opinion and despite, upon information and

26 | belief, having permitted such transactions to take place without the unreasonable and improper

27 | restrictions set forth above on multiple occasions prior to and contemporaneous with Zynga's

28 | receipt of the fully executed November SPA and accompanying materials.

61.   For example, SecondMarket's own website provides that transactions in Zynga common stock represented 15% of all transactions that SecondMarket helped complete in February 2010.

62.   Further, upon information and belief, approximately $6 million in Zynga shares were traded via marketplaces such as SecondMarket in 2009, and Digital Sky Technologies has invested $180 million in Zynga through both direct investment and the purchase of company shares via marketplaces such as SecondMarket.

63.   The TroyGould PC Legal Opinion—provided by a nationally recognized and sophisticated law firm—was reasonable, fair and, upon information and belief, consistent with legal opinions that Zynga had previously received in connection with the sale or transfer of Zynga shares via marketplaces such as SecondMarket.

64.   Under such circumstances, Zynga cannot reasonably, plausibly or in good faith claim that the TroyGould PC Legal Opinion, which provides that the offer and sale of the Shares is being made pursuant to Rule 144 of the Securities Act of 1933, as amended, and will be in compliance with all applicable federal and state securities laws, is or was unacceptable.

65.   Indeed, at no time during any communications between Alpha and Zynga during the period from August 26, 2010, when Zynga received the Notice of the August SPA, through December 2010, when Alpha was informed that Zynga "is simply not going to let any transfer take place here," did Zynga ever assert that it was not satisfied with the TroyGould PC Legal Opinion or that it had concerns about whether the transaction between Trader and Alpha was legal under federal or California securities laws or any other laws, rules or regulations.

66.   Further, upon information and belief, at no time during any communications between Trader and Zynga during the period from August 26, 2010, when Zynga received the Notice of the August SPA, through December 2010, when Zynga informed Trader and SecondMarket that Zynga "is simply not going to let any transfer take place here," did Zynga ever assert that it was not satisfied with the TroyGould PC Legal Opinion or that it had concerns about whether the transaction between Trader and Alpha was legal under federal or California securities laws or any other laws, rules or regulations.

1       67.    As a result of Zynga's unreasonable, arbitrary and improper refusal to accept the

2  TroyGould PC Legal Opinion or to permit the share transfer to Alpha from Trader, Alpha has been

3  denied the bargained-for benefit of its contract with Trader, *i.e.*, the opportunity to purchase, own

4  and hold the Shares and to hold those Shares free from unreasonable restrictions. Zynga's refusal

5  is of particular consequence to Alpha because, as has been widely reported in the media, Zynga's

6  valuation has increased tremendously since Alpha and Trader signed the August SPA, and the

7  value of the Shares Alpha agreed to purchase under the August SPA and under the November SPA

8  has increased in value significantly since then.

9  **M.**    **The Delaware and Central District of California Actions**

10      68.    Zynga is a Delaware corporation and its internal corporate matters are governed by

11  Delaware law. Therefore, Alpha brought an action against Zynga in the Delaware Court of

12  Chancery, captioned *Alpha Investment, LLC v. Zynga Inc.*, C.A. No. 6225-VCS, challenging

13  Zynga's effort to preclude Alpha and Trader from consummating the sale of the Shares.

14      69.    On February 28, 2011, Alpha filed its Verified Complaint in the Delaware Court of

15  Chancery and on March 1, 2011, Alpha served its Verified Complaint on Zynga. Alpha brought

16  claims against Zynga for mandatory injunctive relief requiring Zynga to register the Shares in

17  Alpha's name, as well as claims for declaratory relief and for tortious interference with Alpha's

18  prospective business advantage.

19      70.    On March 4, 2011, Alpha served Zynga with its First Request for Production of

20  Documents, seeking, *inter alia*, Zynga's corporate governance documents and bylaws. Zynga

21  produced no discovery in response, but rather, on March 21, 2011, it moved to dismiss the action

22  and, on April 8, 2011, moved to stay all discovery.

23      71.    In its motion to stay discovery, Zynga argued that staying discovery was

24  appropriate because Alpha had not and could not assert that Trader had taken all steps necessary to

25  effectuate the transfer of the Shares from Trader to Alpha. Specifically, Zynga claimed that

26  Trader had failed to meet his obligation to provide Zynga with a legal opinion. According to

27  Zynga, "Nowhere in the Complaint . . . does Alpha allege that Mr. Trader has satisfied this

28  condition. In fact, Mr. Trader has not done so."

72. In Zynga's opening brief in support of its Motion to Dismiss, filed April 20, 2011, Zynga again alleged that Alpha could not state a claim against it because Trader had failed to provide a satisfactory legal opinion to Zynga as required by the Binding Stockholder Agreements and the August SPA. Zynga asserted that "[t]he Complaint fails to allege that such a legal opinion was provided to the Company. (In fact, it was not.)" Zynga also argued that the complaint should be dismissed under Court of Chancery Rule 19 because Alpha had not joined Trader, an indispensible party to the action. As part of Zynga's motion under Rule 19, Zynga claimed that full relief on the issues could not be had in Trader's absence and that as a resident of California, Trader was not subject to the Delaware Court of Chancery's jurisdiction.

73. Notwithstanding Alpha's belief that Trader has provided the required legal opinion to Zynga, *i.e.*, the TroyGould PC Legal Opinion, and despite Alpha's disagreement generally with the claims and arguments set forth in Zynga's motion to dismiss the Delaware action, to avoid any further delay, Alpha voluntarily dismissed the Delaware action without prejudice to bring a complaint naming both Zynga and Trader as defendants.

74. On June 3, 2011, Alpha filed a complaint naming Zynga and Trader as defendants in the Western Division of the Central District of California, captioned *Alpha Investment, LLC v. Zynga Inc. and Andrew Trader*, No. CV11-04764-DMG (CWx). Pursuant to Local Rule 7.3 of the Local Rules for the Central District of California, on July 6, 2011 and on July 7, 2011, the parties held telephonic conferences to discuss the substance of Zynga's and Trader's contemplated motions to dismiss and motions to transfer venue to the Northern District of California. As a result of these conferences and in order to resolve certain issues raised therein, the parties agreed and stipulated to voluntary dismissal of the Central District of California action without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii). Alpha now brings the instant action against Zynga and Trader.

## FIRST CLAIM FOR RELIEF

### (Mandatory Injunction Against Zynga)

75. Alpha incorporates the allegations in paragraphs 1 through 74 as if fully set forth herein.

1    76.    Zynga chose to allow its 30 day Right of First Refusal to lapse during which time it
2  had the right and opportunity to purchase the Shares and thus prohibit the sale and transfer of the
3  Shares to Alpha.  Given that Zynga chose not to exercise this right and that, as set forth above, all
4  of the conditions for closing under the November SPA and/or the August SPA have been satisfied,
5  Zynga was required to act in good faith and consistent with its prior course of conduct with respect
6  to previous purchases of its shares.  Zynga should have properly accepted the TroyGould PC
7  Legal Opinion that was provided to it by Trader, registered the Shares in Alpha's corporate name
8  and issued Alpha a duly executed stock certificate evidencing the Shares in Alpha's corporate
9  name in accordance with the August SPA and/or the November SPA, and it should have done so
10  without seeking to impose any additional, improper restrictions on the Shares.

11    77.    Zynga has repeatedly and unreasonably refused to register the Shares in Alpha's
12  corporate name and to issue Alpha a certificate for the Shares.  Instead, Zynga has (i) purported to
13  impose additional improper and unlawful restrictions on the Shares, (ii) insisted that it will only
14  register the Shares in Alpha's corporate name and issue Alpha a certificate for the Shares with
15  these additional, wrongful restrictions in place, (iii) averred before the Chancery Court of the State
16  of Delaware that Trader did not satisfy his obligation by providing Zynga with a satisfactory legal
17  opinion when, upon information and belief, Trader provided such an opinion in the TroyGould PC
18  Legal Opinion, and (iv) refused to register the transfer in any event.

19    78.    Alpha and Trader have satisfied all of the conditions for closing under the
20  November SPA and/or the August SPA.

21    79.    A mandatory injunction requiring Zynga to accept the TroyGould PC Legal
22  Opinion provided by Trader, to register the Shares in Alpha's corporate name and to issue Alpha a
23  certificate for the Shares is necessary because Alpha lacks an adequate remedy at law.

24    80.    By reason of the foregoing, and notwithstanding any provision to the contrary,
25  Alpha is entitled to a mandatory injunction requiring Zynga to accept the TroyGould PC Legal
26  Opinion provided by Trader, to register the Shares in Alpha's corporate name and to issue Alpha a
27  certificate for the Shares and without the imposition of any wrongful or unreasonable restrictions
28  on the Shares beyond those contained in the November SPA and the November Representation

1  Letter and/or the August SPA.

2  **SECOND CLAIM FOR RELIEF**

3  **(Declaratory Judgment Against Zynga)**

4      81.    Alpha incorporates the allegations in paragraphs 1 through 80 as if fully set forth

5  herein.

6      82.    A declaratory judgment is necessary because Alpha lacks an adequate remedy at

7  law.

8      83.    Alpha and Zynga have an actual controversy concerning Zynga's obligation to

9  authorize the transfer of the Shares to Alpha from Trader, to register the Shares on behalf of Alpha

10 and to issue Alpha a certificate for the Shares in accordance with the November SPA and/or the

11 August SPA.

12     84.    The parties have a real and adverse interest in the controversy, and such

13 controversy is ripe for judicial determination.

14     85.    By reason of the foregoing and pursuant to 28 U.S.C. §§ 2201 and 2202, Alpha is

15 entitled to a declaration that (i) Trader provided Zynga with a satisfactory legal opinion in the

16 TroyGould PC Legal Opinion; (ii) Zynga is obliged to authorize the transfer of Shares in

17 accordance with the November SPA and/or the August SPA; (iii) Zynga is precluded from placing

18 additional, unspecified and unreasonable restrictions on the Shares beyond those contained in the

19 August SPA or in the November SPA and the November Representation Letter; and (iv) Zynga

20 must register the Shares in Alpha's corporate name and issue Alpha a certificate for the Shares.

21 **THIRD CLAIM FOR RELIEF**

22 **(Intentional Interference with Prospective Economic Advantage Against Zynga)**

23     86.    Alpha incorporates the allegations in paragraphs 1 through 85 as if fully set forth

24 herein.

25     87.    Alpha had a valid and binding prospective business relationship with Trader with a

26 strong probability of future economic benefit to Alpha, as set forth in both the August SPA and the

27 November SPA between Alpha and Trader.

28     88.    Zynga acknowledged the existence of Alpha's business expectancy and

- 17 -
COMPLAINT

1  intentionally interfered with that expectancy by, *inter alia*, (i) demanding additional, wrongful and

2  unreasonable restrictions on transfer of the Shares, (ii) not accepting the TroyGould PC Legal

3  Opinion provided by to Zynga by Trader and (iii) refusing to allow the sale and transfer of the

4  Shares from Trader to Alpha.

5       89.    Zynga, in refusing to allow transfer of the Shares from Trader to Alpha without

6  imposing additional, wrongful and unreasonable restrictions that, upon information and belief,

7  were unprecedented in Zynga's prior course of conduct with respect to previous purchases of its

8  shares and not supported by its Tenth Amended and Restated Certificate of Incorporation or its

9  bylaws then in effect, was not acting with justification, in good faith, or to protect a legitimate

10  business interest.

11      90.    Nor was Zynga acting with justification, in good faith, or to protect a legitimate

12  business interest in refusing to allow transfer of the Shares from Trader to Alpha despite having

13  received the TroyGould PC Legal Opinion provided to Zynga by Trader.

14      91.    Rather, such actions were wrongful in and of themselves, and they also were

15  performed with the intention of interfering with Alpha's business relationship with Trader.  In

16  fact, Zynga's refusal to allow the sale and transfer of the shares from Trader to Alpha did interfere

17  with Alpha's business relationship with Trader.

18      92.    Zynga's interference has deprived Alpha of its business expectancy, *i.e.*, to

19  purchase, own and hold the Shares and to hold those Shares free from additional and unreasonable

20  restrictions on transfer.

21      93.    Alpha has suffered damages caused by Zynga's interference with Alpha's business

22  relationship with Trader.

23                      **FOURTH CLAIM FOR RELIEF**

24              **(In the Alternative, Breach of Contract, Against Trader)**

25      94.    Alpha incorporates the allegations in paragraphs 1 through 74 as if fully set forth

26  herein.

27      95.    Upon information and belief, the November SPA is a valid and enforceable written

28  contract between Alpha and Trader. Further, if for any reason the November SPA is found not to

1  be enforceable, the August SPA is a valid and enforceable written contract between Alpha and
2  Trader.

3      96.    Alpha has performed its obligations and complied with all closing conditions and
4  requirements under the November SPA and/or the August SPA. To the extent that Alpha has not
5  performed all of its obligations and complied with all of the conditions under the November SPA
6  and/or the August SPA, its performance of such conditions has been excused, waived, prevented
7  or made impossible or impracticable by Trader.

8      97.    To the extent that Trader did not provide Zynga with a satisfactory legal opinion in
9  the TroyGould PC Legal Opinion, or failed to satisfy any other requirements for delivery to Zynga
10 under Section 2.2 of the November SPA (or Section 2.3 of the August SPA, as applicable), Trader
11 failed to meet his obligations and therefore breached the November SPA and/or the August SPA.

12     98.    To the extent Trader breached his obligations in the November SPA and/or the
13 August SPA, as a direct and proximate cause of Trader's wrongful conduct, Alpha has suffered
14 damages because Alpha has been deprived of its bargained-for benefit of its contract with Trader,
15 *i.e.*, the opportunity to purchase, own and hold the Shares, the value of which exceeds the
16 minimum jurisdictional amount for this action.

17                    **FIFTH CLAIM FOR RELIEF**

18        **(Tortious Interference with Contract, in the Alternative, Against Zynga)**

19     99.    Alpha incorporates the allegations in paragraphs 1 through 74 and 94 through 98 as
20 if fully set forth herein.

21     100.   Alpha had a valid and binding economic relationship with Trader with a strong
22 probability of future economic benefit to Alpha, as set forth in both the August SPA and the
23 November SPA between Alpha and Trader.

24     101.   Zynga had knowledge of this economic relationship at least as early as August 26,
25 2010, when Trader provided Zynga and counsel for Zynga with the Notice that set forth the terms
26 of the agreement between Alpha and Trader and formally provided Zynga with (i) notice of the
27 proposed sale of the Shares pursuant to the August SPA and (ii) the opportunity for Zynga to
28 exercise its Right of First Refusal for purchase of the Shares.

1    102.    Further, upon information and belief, the November SPA between Alpha and
2    Trader is a valid contract, of which Zynga also had knowledge, given that, upon information and
3    belief, the fully executed November SPA was provided to Zynga on or about November 30, 2010.

4    103.    If, for any reason, the November SPA is found not to be enforceable, the August
5    SPA is a valid contract of which Zynga had knowledge pursuant to the Notice that was provided to
6    it by Trader in August 2010.

7    104.    Upon information and belief, Zynga, in refusing to allow transfer of the Shares
8    from Trader to Alpha without imposing additional, wrongful and unreasonable restrictions that
9    were unprecedented in Zynga's prior course of conduct with respect to previous purchases of its
10   shares and not supported by its Tenth Amended and Restated Certificate of Incorporation or its
11   bylaws then in effect, acted intentionally and unreasonably in order to induce Trader to breach his
12   obligations under Section 2.2 of the November SPA (or Section 2.3 of the August SPA, as
13   applicable).

14   105.    Likewise, upon information and belief, Zynga, in intentionally, arbitrarily and
15   unreasonably refusing to accept the TroyGould PC Legal Opinion provided to it by Trader, acted
16   intentionally and unreasonably in order to induce Trader to breach his obligations under Section
17   2.2 of the November SPA (or Section 2.3 of the August SPA, as applicable).

18   106.    Zynga's intentional refusal to allow transfer of the Shares from Trader to Alpha
19   without imposing additional, wrongful and unreasonable restrictions on such transfer, as well as its
20   intentional refusal to accept the TroyGould PC Legal Opinion, caused Trader to breach his
21   contractual obligations under the November SPA and/or the August SPA.

22   107.    As a direct and proximate cause of Zynga's intentional and wrongful conduct,
23   Alpha has suffered damages as a result of Trader's breach of the November SPA and/or the
24   August SPA because Alpha has been deprived of its bargained-for benefit of the November SPA
25   and/or the August SPA, *i.e.*, the opportunity to purchase, own and hold the Shares, the value of
26   which exceeds the minimum jurisdictional amount for this action.

27

28

1
## PRAYER FOR RELIEF

2 **WHEREFORE,** Plaintiff Alpha respectfully requests that the Court enter judgment in its

3 favor and against defendants Zynga and Trader as follows:

4      a.   Awarding Alpha its actual damages on each of its claims;

5      b.   Granting Alpha all injunctive relief requested herein;

6      c.   Issuing a mandatory injunction requiring Zynga to accept the TroyGould

7        PC Legal Opinion provided to it by Trader, register the Shares in Alpha's

8        corporate name and issue Alpha a certificate for the shares;

9      d.   Granting Alpha the declaratory and equitable relief requested herein;

10      e.   Declaring and determining that Zynga has tortiously interfered with Alpha's

11        prospective business advantage;

12      f.   As to the Fourth Claim for Relief for Breach of Contract, ordering specific

13        performance under the November SPA and/or the August SPA by Trader;

14      g.   Awarding Alpha its costs, expenses, disbursements, and attorney's fees in

15        respect hereto; and

16      h.   Granting Alpha such other relief as the Court deems just and proper.

17
## JURY DEMAND

18 Plaintiff hereby demands a trial by jury on all claims so triable pursuant to Fed. R. Civ.

19 Proc. § 38(b).

21 DATED: July 15, 2011      ALLEN & OVERY LLP

22      CRONE HAWXHURST LLP

24      By: _____

     for Gerald E. Hawxhurst

25      Attorneys for Plaintiff
     Alpha Investment, LLC