# EXHIBIT A

1  VICK LAW GROUP, APC
     Scott Vick (No. 171944)
2    Lital Gilboa (No. 263372)
   800 West Sixth Street, Suite 1220
3  Los Angeles, California 90017
   Telephone:  (213) 784-6225
4  Facsimile:   (213) 985-7155
   Scott@vicklawgroup.com
5  Lital@vicklawgroup.com

6  Attorneys for Defendant
   ANDREW TRADER
7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| ALPHA INVESTMENT, LLC, | Case No. CV 11-3500-JSW |
| Plaintiff, | **[PROPOSED] NOTICE OF MOTION AND MOTION TO DISMISS FIRST CAUSE OF ACTION OF THE COMPLAINT FOR PURPORTED MANDATORY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF.** |
| v. | |
| ZYNGA INC. and ANDREW TRADER, | |
| Defendants. | |
| | Date:        October 14, 2011<br>Time:       9:00 a.m.<br>Location:  Courtroom 11 |

1 **NOTICE OF MOTION AND MOTION TO INTERVENE**

2 TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3     PLEASE TAKE NOTICE that Defendant Andrew Trader ("Mr. Trader") will and hereby

4 does move this Court pursuant to Federal Rule of Civil Procedure, Rule 12(b)(6) for an order

5 dismissing with prejudice the First Cause Of Action in the Complaint for purported Mandatory

6 Injunction.  This Motion shall be brought for hearing before the Honorable Jeffrey S. White, United

7 States District Court for the Northern District Of California (San Francisco Division), San Francisco

8 Courthouse, Courtroom 11, 19th Floor, 450 Golden Gate Avenue, San Francisco, California 94102

9 on October 14, 2011 at 9:00 a.m.

10     Mr. Trader's Motion to Dismiss the first cause of action in the Complaint for purported

11 mandatory injunction is brought pursuant to Rule 12(b)(6) on the grounds that the Complaint fails to

12 state a claim upon which relief can be granted.

13     This Motion is based upon this Notice of Motion and Motion, the attached Memorandum of

14 Points and Authorities, the Request for Judicial Notice and accompanying exhibits filed therewith,

15 the Declaration of Scott Vick, argument of counsel, on all the pleadings and papers of record in this

16 matter, and on such other matters as the Court may properly consider on this motion.

17   DATED:  August 5, 2011        VICK LAW GROUP, APC

19                 By:   /s/  Scott Vick

20                 VICK LAW GROUP, APC
21                   Scott Vick (No. 171944)
                  Lital Gilboa (No. 263372)
22

23                 Attorneys for Defendant
                ANDREW TRADER

24

25

26

27

28

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff's First Cause of Action purports to assert a claim against Defendant Zynga, Inc. ("Zynga") for "Mandatory Injunction," upon which Plaintiff seeks a court order mandating that Zynga: (1) accept the legal opinion provided to Zynga by Defendant Andrew Trader ("Mr. Trader") in connection with the proposed sale of Zynga stock to Plaintiff by Mr. Trader; (b) register Mr. Trader's shares in Alpha's corporate name; and (c) issue and deliver to Alpha a duly executed stock certificate evidencing the shares in Alpha's corporate name. (Compl. ¶¶ 7, 79-80; and prayer for relief (c)). Although Plaintiff nominally asserts the claim only against Zynga, but not Defendant Andrew Trader ("Mr. Trader"), the requested relief could not be issued without requiring that Mr. Trader re-tender his shares in direct contravention of the agreements that govern the transaction. For this reason, Mr. Trader seeks to intervene as a defendant to the First Cause of Action and seek its dismissal.

Plaintiff's so-called "Mandatory Injunction" claim is riddled with defects that require its dismissal with prejudice. To begin with, it is well settled under California law,[1] that an injunction is a remedy, not a cognizable cause of action. For this reason alone, Plaintiff's first cause of action must be dismissed. And, because there is no way Plaintiff can cure this particular deficiency, the Court should dismiss Plaintiff's First Cause of Action for a Mandatory Injunction with prejudice.

But Plaintiff's "Mandatory Injunction" cause of action fails for another reason. Even if a cause of action for a "mandatory injunction" was cognizable under California law (and it is not), no injunction could issue because Plaintiff has an adequate remedy at law on the face of the Complaint. Specifically, Plaintiff alleges that: (1) it contracted to buy one million shares of Zynga stock for $12.87 per share (Compl. ¶ 1); (2) the proposed transaction was wrongfully scuttled (Compl. ¶ 77); and (3) since then the value of the shares has increased (Compl. ¶ 67). Even if Plaintiff were entitled to relief (and it is not), calculating monetary damages based on the facts alleged in the Complaint is

---

[1] The parties agreed to be bound by California law under all of the operative agreements governing this dispute. *See* RJN Ex. A (SPA ¶ 7.2); Ex. B (Stock Option Agreement ¶ 16); Ex. C (Exercise Agreement ¶ 16).

a strait-forward mathematical exercise of the difference between $12.87 and the value of the shares. Under California law, Plaintiff has no right to seek injunctive relief because on the face of the Complaint "pecuniary compensation would … afford adequate relief." Cal. Civ. Code § 3422.

In addition to the insurmountable obstacles described above, there is another. An injunction would contravene, and seek to re-write, the binding terms of the parties' agreement. Under the terms of the Stock Purchase Agreement ("SPA"), Plaintiff "acknowledge[d]" and "agree[d]" it "is bound" by the terms of a Stock Option Agreement and an Exercise Agreement. *See* RJN Ex. A (SPA ¶¶ 5.1 and 5.2), Ex. C (Stock Option Agreement); Ex. D (Exercise Agreement). In the Exercise Agreement, Plaintiff agreed that the proposed transaction had to be consummated, if at all, within 120 days of the date that Zynga was provided with Notice (as that term is defined in the agreement) of the proposed transaction. Once the 120-day window closed, Mr. Trader's stock could not be transferred. Plaintiff agreed to restrictions in the Exercise Agreement providing that, in order for Mr. Trader's stock to be transferred after expiration of this 120-day window, a ***new Notice*** would have to be issued under which Mr. Trader would have to make a new agreement to re-tender his shares. Thereafter, Zynga would have a right of first refusal. Plaintiff concedes that the contemplated transaction was not consummated within the required 120-day window, thereby precluding the transfer of Mr. Trader's stock. Moreover Plaintiff fails to allege that any new Notice was issued, that Mr. Trader agreed to re-tender his stock, or that Zynga declined to exercise its right of first refusal. Plaintiff is not entitled to end-run around these contractual provisions to which it agreed by seeking an injunction.

Plaintiff's First Cause of Action for a Mandatory Injunction fails as a matter of law and as a pleading matter. Because the defects cannot be cured, it should be dismissed with prejudice.

## II. BACKGROUND

### A. The Restrictions On Mr. Trader's Stock

Andrew Trader is a former employee of Defendant Zynga, Inc. ("Zynga"), a company that, among other things, develops and markets games such as FarmVille, CityVille and Mafia Wars that are used on social networking websites such as Facebook and MySpace. Compl. ¶¶ 19, 24. During

his employment at Zynga, Mr. Trader received Zynga stock pursuant to the terms of a Stock Option Agreement ("Stock Option Agreement") and Stock Option Exercise Agreement ("Exercise Agreement").  Compl. ¶¶ 19, 22, 24.

Because Zynga is not a publicly traded company and the Zynga stock Mr. Trader owns has never been registered with the Securities and Exchange Commission ("SEC"), Mr. Trader's Zynga stock is not freely transferable and is subject to strict federal and state securities laws.  Under federal and state securities laws, Mr. Trader's stock can only be transferred, *inter alia*, if a sale is "qualified" and subject to an exemption from SEC registration requirements.  In other words, Mr. Trader could not transfer his stock, nor could Zynga provide the required consent, if the transfer would violate federal or state securities laws.

**B.     Plaintiff and Defendant Andrew Trader Executed The Stock Purchase Agreement ("SPA") And Representation Letter For The Sale Of Zynga Stock**

After Mr. Trader left Zynga, he endeavored to sell some of his Zynga stock.  In the Summer of 2010, a corporate intermediary called SecondMarket, Inc. ("SecondMarket") introduced Plaintiff, a prospective buyer, to Mr. Trader.  Compl. ¶¶ 26-27.

With SecondMarket's assistance, Mr. Trader and Plaintiff entered into a Stock Purchase Agreement on August 26, 2010 whereby Mr. Trader agreed to sell one million shares of Zynga common stock to Plaintiff, subject to certain terms and conditions, for approximately $12.8 million.  Compl. ¶ 28.

Zynga did not approve of this August 26, 2010 agreement, and insisted that the parties use Zynga's own form of agreement.  The parties complied with that request.  On November 23, 2010, Plaintiff and Mr. Trader entered into a new Stock Purchase Agreement ("SPA") in exactly the form required by Zynga.  The SPA contained an integration clause (SPA ¶ 7.4) that superseded the prior agreement.  Compl. ¶¶ 22, 50.  Plaintiff and Mr. Trader simultaneously executed a Representation Letter substantially in the form that Zynga had requested, although Plaintiff refused to consent to and deleted one of the terms that Zynga had insisted be included in the document.  Compl. ¶ 50.

**C.     Plaintiff Acknowledged And Agreed That Plaintiff "Is Bound" By The Terms Of**

### The Stock Option And Exercise Agreements

Mr. Trader's stock was subject to numerous restrictions and limitations set forth in a Stock Option Agreement and an Exercise Agreement. In paragraphs 5.1 and 5.2 of the SPA, Plaintiff "acknowledge[d]" and "agree[d]" that *Plaintiff "is bound by" the terms of the Binding Stockholder Agreements*. RJN Ex. A (emphasis added). In the Representation Letter executed by Plaintiff, it agreed that the "*Binding Stockholder Agreements*" included the *Stock Option Agreement* and the *Exercise Agreement*. RJN Ex. B. (emphasis added). Specifically, SPA ¶¶ 5.1 and 5.2 state:

> **5.1 Binding Stockholder Agreements**. [Plaintiff] acknowledges and agrees that it *is bound by*, and the Shares will be subject to, the terms of *the Binding Stockholder Agreements* applicable to subsequent purchasers of the Shares.
>
> **5.2 Representation Letter.** [Plaintiff] acknowledges and agrees that it *is bound by*, and the Shares will be subject to, the provisions of the *Representation Letter.*

*Id.* (emphasis added); *see also* Representation Letter, RJN Ex. B (stating that "Binding Stockholder Agreements" include the "Stock Option Agreement" and "Stock Option Exercise Agreement").

Although the Stock Option Agreement and Exercise Agreement are integral to and deemed part of the contract between Plaintiff and Mr. Trader for purposes of this Motion to Dismiss,[2] in violation of federal pleading requirements, Plaintiff conspicuously fails to attach them to its Complaint or to allege the terms in them that completely undercut Plaintiff's claims.

### D.  Plaintiff Agreed That The Proposed Transaction Would Expire 120 Days After The Notice Was Given To Zynga

In the Exercise Agreement, Plaintiff agreed that the proposed transaction had to be consummated, if at all, within 120 days from the date that Notice[3] of the proposed transaction was provided to Zynga. Specifically, Paragraph 9.5 of the Exercise Agreement provides:

---

[2] *Williams Constr. Co. v. Standard-Pacific Corp.,* 254 Cal. App. 2d 442, 454 (1967) ("a secondary document becomes part of a contract as though recited verbatim when it is incorporated into the contract by reference, provided that the terms of the incorporated document are readily available to the other party.").

[3] The "Notice" was required include specific information about the proposed transaction set forth in Exercise Agreement 9.1.

> **9.5  Holder's Right to Transfer.**  If all of the Offered Shares proposed in the Notice to be transferred to a given Proposed Transferee are not purchased by the Company . . . then *the Holder may sell or otherwise transfer such Offered Shares* to each Proposed Transferee at the Offered Price or at a higher price, <u>*provided that* (i) such sale or other *transfer is consummated within 120 days*</u> after the date of the Notice.

### E. Plaintiff Further Agreed That If The Transaction Was Not Consummated Within The 120-Day Window, Any Subsequent Transfer Would Require A *New Notice* And A New Agreement By Mr. Trader To Re-Tender His Shares

In the Exercise Agreement, Plaintiff also agreed that if the transaction was not consummated within this 120-day period, no subsequent transfer of shares could occur unless "*a new Notice*" was given to Zynga giving it a right to exercise a new right of first refusal:

> *If the Offered Shares* described in the Notice *are not transferred to each Proposed Transferee within such 120 day period, then* <u>*a new Notice must be given*</u> to the Company pursuant to which the Company will again be offered the Right of First Refusal before any Shares held by the Holder may be sold or otherwise transferred.  *See* RJN, Ex. D (Exercise Agreement ¶ 9.5) (emphasis added).

More importantly from Mr. Trader's perspective, in order for a "new Notice" to be given, Mr. Trader would have to agree to re-tender his shares, and come to an agreement with Plaintiff as to the number of shares to be sold and the price to be paid for them.  Specifically, Paragraph 9.1 of the Exercise Agreement provides:

> **9.1  <u>Notice of Proposed Transfer</u>.**  The Holder of the Offered Shares will deliver to the Company a written notice (the "***Notice***") stating: (i) *the Holder's bona fide intention to sell* or otherwise transfer the Offered Shares; (ii) the name and address of each proposed … transferee (the "Proposed Transferee"); (iii) the number of Offered Shares to be transferred …; (iv) the bona fide cash price or other consideration for which the Holder proposes to transfer the Offered Shares…; and (v) that the Holder acknowledges this Notice is an offer to sell the Offered Shares to the Company and/or its assignee(s) pursuant to the Company's Right of First Refusal at the Offered Price as provided for in this Exercise Agreement.  *See* RJN, Ex. D (Exercise Agreement ¶ 9.1) (emphasis added).

### F. Serious Questions Arise As To Whether SecondMarket's Internet Advertising Violated California Securities Laws, And That Taint Scuttles The Transaction

Although Plaintiff bemoans that Zynga refused to consent to the transfer of stock, it bears emphasizing that Zynga can be held individually liable (both civilly and criminally) for, *inter alia*, aiding and abetting violations of the securities laws, if Zynga were to knowingly facilitate the transfer of unregistered Zynga stock from one person to another (*e.g.*, by changing the registered owner of the stock or issuing or delivering new stock certificates in the name of a different party) in the absence of a exemption permitting the transfer.

Due to this potential liability, companies like Zynga will refuse to consent to a transfer, unless they obtain a satisfactory legal opinion that the proposed transaction does not violate the federal or state securities laws. And, if during the course of a proposed transaction, Zynga becomes aware of facts that raise serious questions about whether the transaction violates the federal or state securities laws, Zynga is not required to provide its consent.

Here, Plaintiff alleges that the intermediary (SecondMarket) that facilitated the transaction between Plaintiff and Mr. Trader operated an "online marketplace." Compl. 26. Nowhere in the Complaint, however, does Plaintiff address how SecondMarket's "online marketplace" ran headlong into the California securities laws prohibition of intermediaries like SecondMarket advertising on the internet, and how that SecondMarket taint scuttled the transaction. While it is understandable that Plaintiff avoids discussing the SecondMarket taint, Plaintiff's First Cause of Action fails regardless.

### G. Since The Expiration Of The 120-Day Window, No Notice Has Been Given And Mr. Trader Has Not Agreed To Re-Tender His Shares

Plaintiff alleges that Notice of the transaction, which triggers the 120-day clock, was provided to Zynga on ***August 26, 2010***. Compl. ¶¶ 32-34 ( "On or about August 26, 2010, Trader provided Zynga . . . with a Notice"). Plaintiff concedes that the transaction was not consummated (Compl. ¶ 77). Thus, the 120-day window closed on December 24, 2010.

Plaintiff agreed that no transfer of shares could occur after the 120-day window closed unless a "*new Notice*" was provided to Zynga. Plaintiff fails to allege that the required "new Notice" was provided to Zynga. *See* RJN Ex. D (Exercise Agreement ¶ 9.1). Furthermore, a new Notice would require that Mr. Trader agree, among other things, to re-tender his shares. Plaintiff also fails to

allege that Mr. Trader agreed to re-tender his shares.  Plaintiff cannot end-run around these contractual requirements by seeking an injunction that could cloud title to Mr. Trader's shares.

### III. PLAINTIFF'S FIRST CAUSE OF ACTION FOR "MANDATORY INJUNCTION " FAILS TO STATE A CLAIM AND MUST BE DISMISSED

Plaintiff's First Cause of Action purports to assert a claim for a "Mandatory Injunction," upon which Plaintiff seeks an order mandating that Zynga:

- Accept the legal opinion provided to Zynga by Trader;
- Register Mr. Trader's shares in Alpha's corporate name; and
- Issue and deliver to Alpha a duly executed stock certificate evidencing the Shares in Alpha's corporate name.

(Compl. ¶¶ 7, 7-80, prayer for relief (c)-(d)).  As explained below, this cause of action is riddled with fatal and incurable defects that require its dismissal.

#### A. There Is No Recognized Cause Of Action For A Mandatory Injunction

Under California law, it is well settled that a  "cause of action for an injunction [i]s improper as an injunction is a remedy, not a cause of action. " *Roberts v. Los Angeles County Bar Ass'n*, 105 Cal. App. 25 4th 604, 618 (2003) (*citing McDowell v. Watson*, 59 Cal. App. 4th 1155, 1159 (1997)); *City of South Pasadena v. Detp. of Trans.*, 29 Cal. App. 4th 1280, 1293 (1994) ( "Injunctive relief is a remedy, not a cause of action. ").  Because Plaintiff's claim for a Mandatory Injunction is not a cognizable cause of action under California law, it should be dismissed.  Because this defect is not curable by amendment, the First Cause of Action should be dismissed with prejudice.

#### B. Regardless, On The Face Of The Complaint, Plaintiff Cannot Seek An Injunction Because It Has An Adequate Remedy At Law

Apart from the fact that a  "mandatory injunction" is not a cognizable cause of action in the first place, it is not even available as a remedy where, as here, "pecuniary compensation would … afford adequate relief. " Cal. Civ. Code § 3422.  Here, on the face of the Complaint. Plaintiff alleges that: (1) it was entitled to purchase one million shares of stock at $12.87 per share (Compl. ¶ 1); (2) the transaction was wrongfully scuttled; (Compl. ¶ 77); and (3) the "value of the Shares…has

---

**[Proposed] Ntc of Mtn and Mtn of Defendant Andrew Trader To Dismiss First Cause of Action**

CASE NO. CV 11-3500 JSW

Page 12
Exhibit A

increased … significantly." (Compl. ¶ 67).  Even assuming, *arguendo*, that Plaintiff had a viable cause of action (which Mr. Trader denies), on the facts Plaintiff alleges in the Complaint, where calculating monetary damages is simple math and there is no indication of any irreparable injury, there is simply no legal basis for injunctive relief.  *See, e.g.*, Cal. Civ. Proc. Code 526(a)(5) (injunction cannot be granted to prevent breach of contract, which is not specifically enforceable).

### C. Under The Exercise Agreement, Injunctive Relief Would Be Improper Because Plaintiff Has No Contractual Right To Cloud Title To Mr. Traders Shares After The 120-Day Window Closed

Plaintiff's claim for injunctive relief fails for the additional reason that it would contravene the terms of the Exercise Agreement to which Plaintiff agreed it was bound.  Under the terms of the Exercise Agreement, to which Plaintiff  "acknowledge[d] " and  "agree[d] " it is bound, the parties had 120 days to consummate the sale.  If the transaction was not consummated within that time period sale would be extinguished.  The Exercise Agreement required that any additional efforts to consummate the sale would require a new notice, which, in turn, would require a new agreement from Mr. Trader to re-tender his shares.  *See* RJN Ex. D (Exercise Agreement ¶¶ 9.1 and 9.5).

The 120-day period during which the contemplated transaction was required to be consummated began to run on August 26, 2010 and, because no transaction was consummated, the deal expired on December 24, 2010.  Plaintiff does not allege that any new Notice was provided (under which Zynga would have a new right of first refusal), nor that Mr. Trader agreed to re-tender his stock.  Plaintiff cannot end-run around these contractual restrictions, to which Plaintiff agreed, by seeing an injunction.

///
///
///
///

## IV. CONCLUSION

For each of the foregoing reasons, Defendant Andrew Trader respectfully requests that the

Court dismiss Plaintiff's first cause of action for a purported Mandatory Injunction and strike any prayer for injunctive relief as to Mr. Trader's stock.

DATED:  August 5, 2011              VICK LAW GROUP, APC

                                              By:   /s/  Scott Vick

                                         VICK LAW GROUP, APC
                                            Scott Vick (No. 171944)
                                            Lital Gilboa (No. 263372)

                                           Attorneys for Defendant
                                           ANDREW TRADER