COOLEY LLP
STEPHEN C. NEAL (170085) (nealsc@cooley.com)
JOHN C. DWYER (136533) (dwyerjc@cooley.com)
JEFFREY M. KABAN (235743) (jkaban@cooley.com)
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2155
Telephone: (650) 843-5000
Facsimile: (650) 849-7400

Attorneys for Defendant
ZYNGA INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| ALPHA INVESTMENT, LLC, | Case No. CV 11-3500 JSW |
|---|---|
| Plaintiff, | **DEFENDANT ZYNGA INC.'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | |
| ZYNGA, INC. and ANDREW TRADER, | Judge: Hon. Jeffrey S. White |
| Defendant. | Dept.: 11, 19th Floor |
| | Date: November 4, 2011 |
| | Time: 9:00 a.m. |

## TABLE OF CONTENTS

Page

SUMMARY OF ARGUMENT ................................................................................................ iv
NOTICE OF MOTION AND MOTION ................................................................................... 1
STATEMENT OF ISSUES TO BE DECIDED......................................................................... 1
MEMORANDUM OF POINTS AND AUTHORITIES .......................................................... 1
I. INTRODUCTION ............................................................................................................ 1
II. STATEMENT OF ALLEGATIONS ................................................................................ 2
    A. The Parties............................................................................................................ 2
    B. Restrictions Affecting Mr. Trader's Shares ........................................................ 3
    C. Alpha Agrees that Zynga Shall Not Be Liable to Alpha for the Transaction Failing for Any Reason ........................................................................................ 5
    D. The Purported Legal Opinion .............................................................................. 6
III. PROCEDURAL BACKGROUND................................................................................... 6
IV. ARGUMENT .................................................................................................................... 8
    A. Applicable Legal Standards ................................................................................. 8
    B. All of Alpha's Claims Are Barred by Alpha's Express Waiver of Liability ........ 8
    C. The Court Should Dismiss the Complaint Because Alpha Fails to State a Claim for Which Relief May Be Granted ....................................................................... 9
        1. Alpha's Claims for Injunctive and Declaratory Relief Fail ..................... 9
            a. Alpha Fails to Allege That The Proposed Transaction Complies with All Applicable Securities Laws ........................... 10
            b. Alpha Fails to Allege That a Final Legal Opinion Was Provided to Zynga or That a Legal Opinion Was Provided That Was Satisfactory to Zynga ....................................................... 12
            c. Alpha Fails to Allege That the Transaction Was Completed Within the Required Time Period ................................................. 13
        2. Alpha's Claim for Intentional Interference with Prospective Economic Advantage Fails ..................................................................................... 13
        3. Alpha's Claim for Tortious Interference with Contract Fails ................. 14
V. CONCLUSION ............................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009) ................................................................................................................ 8

*Batt v. City & Cnty. of San Francisco*,
155 Cal. App. 4th 65 (2007) ....................................................................................................... 9

*Christakis v. Mark Burnett Prods.*,
No. CV 08-6864-GW(JTLx), 2009 WL 1248947 (C.D. Cal. Apr. 27, 2009) ............................ 9

*Clegg v. Cult Awareness Network*,
18 F.3d 752 (9th Cir. 1994) ........................................................................................................ 8

*Coates v. Newhall Land & Farming, Inc.*,
191 Cal. App. 3d 1 (1987) .......................................................................................................... 9

*CRV Imperial-Worthington, LP v. Gemini Ins. Co.*,
770 F. Supp. 2d 1070 (S.D. Cal. 2011) .................................................................................... 10

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (Cal. 2003) ................................................................................ iv, 13, 14, 15

*Leadsinger, Inc. v. BMG Music Publ'g*,
512 F.3d 522 (9th Cir. 2008) ................................................................................................ 9, 10

*Madison v. Super. Ct.*,
203 Cal. App. 3d 589 (1988) ................................................................................................ iv, 8

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007) ................................................................................................................. 10

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001) ...................................................................................................... 8

*Quelimane Co. v. Stewart Title Guar. Co.*,
52 Cal. App. 2d 164 (1942) ........................................................................................................ 9

*Shell Oil Co. v. Richter*,
19 Cal. 4th 26 (1998) ............................................................................................................... 14

*Stac Elecs. Sec. Litig.*,
*In re*, 89 F.3d 1399 (9th Cir. 1996) ........................................................................................... 8

*Wilton v. Seven Falls Co.*,
515 U.S. 277 (1995) ................................................................................................................... 9

*World Health & Educ. Found. v. Carolina Cas. Ins. Co.*,
    612 F. Supp. 2d 1089 (N.D. Cal. 2009) .............................................................................. iv, 10

**STATUTES**

Cal. Corp. Code § 25002 .................................................................................................... 11, 12

Cal. Corp. Code § 25014 .................................................................................................... 11, 12

Cal. Corp. Code § 25130 ......................................................................................................... 11

**OTHER AUTHORITIES**

Cal. Dept. of Corp., *Commissioner's Opinion 96/2C*, File No. OP 6600 (Oct. 17, 1996)
    (available at http://www.corp.ca.gov/press/pdf/opinions/OP6600.pdf) .................................. 11

Commissioner's Release: 100-C *Offers of Securities Made on the Internet* (Nov. 5, 1996)
    (available at http://www.corp.ca.gov/Commissioner/Releases/100-C.asp). ........................... 12

Federal Rule of Civil Procedure 12(b)(6) ........................................................................ 1, 2, 8

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

iii.

**DEFENDANT ZYNGA INC.'S NOTICE OF MOTION
AND MOTION TO DISMISS; CV 11-3500 JSW**

**SUMMARY OF ARGUMENT**

Plaintiff Alpha Investments LLC ("Alpha") seeks an order directing Defendant Zynga, Inc. ("Zynga") to record the transfer of one million shares of Zynga stock from Defendant Andrew Trader to Plaintiff. Alpha's claims – like those asserted in two previous lawsuits filed by Alpha – are badly flawed. As a result, Zynga respectfully requests that the Court dismiss the claims against Zynga with prejudice.

The Court should dismiss the claims against Zynga for three primary reasons. First, Alpha explicitly and unambiguously waived any claim it might have against Zynga. The purported contract between Alpha and Mr. Trader, upon which Alpha's claims are based, explicitly waives the precise claims Alpha seeks to assert in this litigation. *See Madison v. Super. Ct.*, 203 Cal. App. 3d 589, 598 (1988).

Second, Alpha fails to state a claim upon which relief may be granted. With respect to the claims for injunctive and declaratory relief, the Complaint fails to allege that the conditions precedent to any obligation Zynga might have to record the alleged stock sale in its records were satisfied. *See World Health & Educ. Found. v. Carolina Cas. Ins. Co.*, 612 F. Supp. 2d 1089, 1094-96 (N.D. Cal. 2009). Among other things, Alpha fails to allege that the purported stock sale complies with the law or that an opinion to that effect and satisfactory to Zynga was ever provided.

Finally, Alpha fails to allege adequate support for its interference claims. The Complaint does not allege that any action by Zynga was independently wrongful, a requirement of an intentional interference of prospective economic advantage claim, or that Zynga intentionally induced Mr. Trader to breach his contract, a requirement for an intentional interference with a contract claim. *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1154-56 (Cal. 2003).

The above defects are fatal to Alpha's claims. Accordingly, Zynga respectfully requests that the Court dismiss the claims against Zynga.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

iv.

DEFENDANT ZYNGA INC.'S NOTICE OF MOTION
AND MOTION TO DISMISS; CV 11-3500 JSW

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD IN THIS MATTER:**

PLEASE TAKE NOTE that on November 4, 2011, at 9:00 a.m., or as soon thereafter as this motion may be heard, in the above-entitled court, located at 450 Golden Gate Avenue, San Francisco, California, in Courtroom 11 (19th Floor), Defendant Zynga Inc. ("Zynga" or the "Company") will and hereby does move to dismiss all claims asserted against it in Plaintiff Alpha Investment LLC's ("Alpha") Complaint (the "Complaint"), pursuant to Federal Rule of Civil Procedure 12(b)(6).

Zynga seeks an order dismissing the claims against Zynga (counts 1, 2, 3, and 5) with prejudice. This motion is based on the pleadings; the accompanying Memorandum of Points and Authorities; Zynga's Request for Judicial Notice; the Declaration of Jeffrey M. Kaban and the exhibits attached thereto; and upon such other matters as may be presented to the Court at the time of the hearing or otherwise.

**STATEMENT OF ISSUES TO BE DECIDED**

1. Whether the claims in the Complaint asserted against Zynga should be dismissed because the contract between Plaintiff Alpha and Defendant Andrew Trader, upon which Alpha's claims are based, contains an express waiver of liability as to Zynga?

2. Whether the Complaint fails to state a claim against Zynga because Alpha has failed to allege that all the conditions precedent in the contract between Mr. Trader and Zynga have been fulfilled such that Zynga would have an obligation to transfer Mr. Trader's shares to Plaintiff?

3. Whether the Complaint fails to state a claim against Zynga because Alpha has failed to allege that any action by Zynga was independently wrongful or that Zynga intentionally induced Mr. Trader to breach his contract?

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

On July 15, 2011, Alpha filed its third complaint against Defendant Zynga, the previous two complaints having been filed and dismissed in Delaware and the Central District of California. The Complaint seeks declaratory and mandatory injunctive relief and demands that this Court direct Zynga to register in Alpha's name one million shares of Zynga stock. Those

shares are currently owned by Mr. Trader. Once again, absent from the Complaint are the fundamental factual allegations necessary to state a claim against Zynga.

*First*, though Alpha's claims are premised on an asserted contract for sale between Alpha and Mr. Trader, Alpha has failed to mention that as part of that purported contract, Alpha expressly waived any claim it might have against Zynga stemming from the transaction. That is, Alpha waived the exact claims it now seeks to assert.

*Second*, even if the Court disregards the express waiver of liability, Alpha still fails to state a claim as the Complaint fails to allege that the conditions precedent to any obligation Zynga might have to record the alleged stock sale in its records were satisfied. Consequently, Alpha has failed to adequately allege a claim upon which relief may be granted. Most importantly, the agreement at the core of Alpha's allegations specifically provides that Zynga need not record a sale of the stocks by Mr. Trader unless, among other things, the sale complies with applicable federal and state securities laws and Mr. Trader has provided Zynga a legal opinion "in form and substance satisfactory" to Zynga to that effect. Yet, the Complaint fails to allege either that the purported transaction between Alpha and Mr. Trader complies with the law or that an opinion satisfactory to the Company was ever provided. These are glaring omissions given the role Second Market, an "online marketplace" for the trading of shares in private companies, played in the transaction between Alpha and Mr. Trader and the very substantial legal questions that arise under California law as a result. These defects and the others set forth below are fatal to Alpha's claims. Accordingly, Zynga respectfully requests that the Court dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. STATEMENT OF ALLEGATIONS

### A. The Parties

Defendant Zynga is a private corporation headquartered in San Francisco, California that develops web-based social gaming applications. (Compl. ¶¶ 11, 19.)[1] Originally formed in 2007 as a California limited liability company under the name Presidio Media LLC, Zynga converted

---

[1] Further references to ¶ __ are to the Complaint unless otherwise specified.

to a Delaware corporation named Presidio Media Inc. in October 2007. (¶ 20.) It later changed its name to Zynga Game Network Inc. and, in November 2010, to Zynga Inc. (*Id.*)

Defendant Andrew Trader is a former employee of Zynga and, according to the Complaint, a resident of California. (¶¶ 12, 24.)

According to the Complaint, Plaintiff Alpha is a limited liability investment company based in Abu Dhabi, United Arab Emirates. (¶ 10.)

**B.  Restrictions Affecting Mr. Trader's Shares**

Alpha alleges that Mr. Trader originally acquired the shares at issue pursuant to a January 3, 2008 Stock Option Exercise Agreement (the "Exercise Agreement") between Mr. Trader and Zynga. (¶ 24.) The Exercise Agreement[2] contains a number of provisions restricting Mr. Trader's ability to transfer his shares in light of the fact that Zynga's Class A Common Stock has not been registered with the U.S. Securities and Exchange Commission ("SEC") under the Securities Act of 1933 ("Securities Act") and that the transfer has not been qualified by the California Commissioner of Corporations under the California securities laws.[3] (Declaration of Jeffrey M. Kaban ("Kaban Decl."), Ex. A ¶¶ 4.1, 4.2.)[4]

In particular, paragraph 5.1 of the Exercise Agreement expressly provides that Mr. Trader may not transfer his shares unless and until the foregoing registration and qualification requirements are met or Zynga determines the transfer is exempt from such requirements:

> **5.  Restricted Securities.**
>
> 5.1  *No Transfer Unless Registered or Exempt*.  Purchaser [i.e. Mr. Trader] understands that Purchaser may not transfer any Shares unless such Shares are registered under the Securities Act or qualified under applicable state securities laws or unless, in the opinion of counsel to the Company, exemptions from such registration and qualification requirements are available. . . . Purchaser has also

---

[2] All of the exhibits to the Kaban Declaration are documents referenced and relied on in the Complaint and are the subject of Zynga's Request for Judicial Notice filed herewith.
[3] On July 1, 2011, Zynga filed a Form S-1 Registration Statement with the SEC in anticipation of its initial public offering. At the time of the offering, Zynga's stock will be "registered" under the Securities Act, thereby allowing for their public trading, and many of Zynga's concerns regarding the propriety of the proposed stock transaction will no longer apply.
[4] Pursuant to Section 5.1 of the November Stock Purchase Agreement executed between Mr. Trader and Alpha, Alpha agreed to be bound by the provisions of the Exercise Agreement. (Kaban Decl. Ex. C. ¶ 5.1.)

been advised that exemptions from registration and qualification may not be available or may not permit Purchaser to transfer all or any of the Shares in the amounts or at the times proposed by Purchaser.

(*Id.* ¶ 5.1.)

Paragraph 6.1 of the Exercise Agreement lists certain of the specific conditions precedent that Mr. Trader must satisfy prior to any transfer of his shares, including the obligation to obtain a legal opinion that the proposed transfer satisfies applicable federal and state securities laws:

> **6. Restrictions on Transfers.**
>
> 6.1 <u>Disposition of Shares</u>. Purchaser hereby agrees that Purchaser shall make no disposition of the Shares . . . unless and until: . . .
>
> (c) Purchaser shall have provided the Company with written assurances, in form and substance satisfactory to counsel for the Company, that (i) the proposed disposition does not require registration of the Shares under the Securities Act or (ii) all appropriate actions necessary for . . . any exemption from registration . . . have been taken; and
>
> (d) Purchaser shall have provided the Company with written assurances, in form and substance satisfactory to the Company, that the proposed disposition will not result in the contravention of any transfer restrictions applicable to the Shares pursuant to the [California Corporations Code and any rules or regulations promulgated thereunder].

(*Id.* ¶ 6.1.) The same requirement is repeated in bold, italicized capital letters in paragraph 12.1:

> ***THE ISSUER OF THESE SECURITIES MAY REQUIRE AN OPINION OF COUNSEL IN FORM AND SUBSTANCE SATISFACTORY TO THE ISSUER TO THE EFFECT THAT ANY PROPOSED TRANSFER OR RESALE IS IN COMPLIANCE WITH THE SECURITIES ACT AND ANY APPLICABLE STATE SECURITIES LAWS.***

(*Id.* ¶ 12.1 (emphasis in original).)

In addition, paragraph 9.1 provides Zynga with a right of first refusal to purchase the shares before the shares can be sold or transferred to a third-party. (*Id.* ¶ 9.1.) Paragraph 9.5 then provides that if Zynga does not exercise its right of first refusal, Mr. Trader can proceed with the proposed transaction only *if*: (1) the transaction is consummated and the shares are transferred within 120 days of the notice of transfer; (2) the transaction is in compliance with all applicable securities laws; and (3) the Proposed Transferee (Alpha) agrees in writing that these restrictions will continue to apply to the shares after the shares are transferred. (*Id.* ¶ 9.5.) Paragraph 9.5 also provides that if the shares are not transferred within 120 days of the notice, Mr. Trader must re-notice the transaction and offer Zynga a new right of first refusal:

> 9.5 <u>Holder's Right to Transfer</u>. . . . If the Offered Shares described in the Notice are not transferred to each Proposed Transferee within such 120 day period, then a new Notice must be given to the Company pursuant to which the Company will again be offered the Right of First Refusal before any Shares held by the Holder may be sold or otherwise transferred.

(*Id.*)

Finally, the Exercise Agreement explicitly states that Zynga shall have no obligation to effectuate or honor any transfer that fails to meet the foregoing conditions:

> 12.3 <u>Refusal to Transfer</u>. The Company will not be required (i) to transfer on its books any Shares that have been sold or otherwise transferred in violation of any of the provisions of this Exercise Agreement or (ii) to treat as owner of such Shares, or to accord the right to vote or pay dividends to any purchaser or other transferee to whom such Shares have been so transferred.

(*Id.* ¶ 12.3.)

### C. Alpha Agrees that Zynga Shall Not Be Liable to Alpha for the Transaction Failing for Any Reason

Alpha asserts that, on or about August 26, 2010, it entered into a Stock Purchase Agreement (hereinafter, the "August SPA") with Mr. Trader, pursuant to which Alpha agreed to purchase from Mr. Trader one million shares of Zynga Class A Common Stock for $12.87 per share. (¶ 28.) Alpha was introduced to Mr. Trader through SecondMarket, "an online marketplace for, *inter alia*, stock in a variety of high growth private companies." (¶¶ 26, 27.)

On or about November 23, 2010, Alpha and Mr. Trader executed a new Stock Purchase Agreement (the "November SPA") and a related representation letter (the "November Representation Letter"). (¶¶ 50, 58.) Paragraph 2.2 of the November SPA states that, prior to the closing date, Mr. Trader will provide a number of items to Zynga, including:

> 2.2 <u>Deliveries by Seller</u> [*i.e.* Mr. Trader]. . . . (iii) a duly executed copy of the Representation Letter . . . (iv) an opinion, in form and substance satisfactory to the Company, from counsel to the Seller satisfactory to the Company that states that the offer and sale of the Shares is being made pursuant to Rule 144 of the Securities Act of 1933, as amended . . . and will be in compliance with all applicable federal and state securities laws; (v) any stock transfer fee, stock handling fee, stock certificate exchange or registration fee, or the like required by the Company; and (vi) any other agreement or document reasonably required by the Company in connection with the transfer of the Shares.

(Kaban Decl., Ex. C; *see also* ¶ 56.) Paragraph 5.2 of the November SPA provides:

        5.2 <u>Representation Letter</u>. Purchaser [*i.e.* Alpha] acknowledges and agrees that it is bound by, and the Shares will be subject to, the provisions of the Representation Letter[.]

(Kaban Decl., Ex. C.) The November SPA also contains an integration clause:

        7.4 <u>Entire Agreement</u>. This Agreement and the documents referred to herein constitute the entire agreement and understanding of the parties with respect to the subject matter of this Agreement and supersede[s] all prior understandings and agreements, whether oral or written, between the parties hereto with respect to the specific subject matter hereof.

(*Id.*) The executed November Representation Letter provides that both Alpha and Mr. Trader represent, warrant and agree to a number of provisions, including that:

        (vi) The Company shall have no liability to Purchaser [*i.e.* Alpha] for the failure of the transactions contemplated by the Agreement to be consummated for any reason, including, the failure of Purchaser or Seller [*i.e.* Mr. Trader] to deliver requested opinions or additional documents to the Company as contemplated by Sections 2.2 and 2.3 of the Agreement

(Kaban Decl., Ex. D.)

### D. The Purported Legal Opinion

Alpha alleges, on information and belief, that Mr. Trader provided Zynga with a legal opinion from TroyGould PC on November 30, 2010 (the "Draft Legal Opinion"). (¶ 58.) The Draft Legal Opinion provided by Mr. Trader was not signed or dated. (Kaban Decl., Exs. B & E.) Further, the Draft Legal Opinion expressly references and relies on purported representations and warranties in a separate certificate provided by Mr. Trader ("Transferor's Certificate") and another certificate by SecondMarket ("SecondMarket Certificate"). (*Id.*) However, no Transferor's Certificate was attached to the Draft Legal Opinion. (*Id.*)

### III. PROCEDURAL BACKGROUND

On February 28, 2011, Alpha filed its first complaint against Zynga in Delaware Chancery Court. (¶ 69.) Alpha asserted claims for a mandatory injunction, declaratory relief and tortious interference with prospective business advantage. (*Id.*) In response, Zynga moved to dismiss the action based on, among other things, Alpha's failure to include Mr. Trader as a defendant and to allege that Mr. Trader had complied with all of the conditions precedent in the Exercise Agreement. (*See* ¶¶ 70, 72.) Instead of opposing the motion, Alpha voluntarily dismissed the complaint. (¶ 73.) Alpha then filed its second action against Zynga, on June 3, 2011, in the

Central District of California, naming both Zynga and Mr. Trader as defendants. (¶ 74.) Pursuant to the local rules in the Central District of California, Zynga's counsel met and conferred with Alpha's counsel regarding numerous deficiencies in Alpha's complaint. (*Id.*) Alpha then dismissed the complaint and, subsequently, re-filed in the Northern District. (*Id.*)

On July 15, 2011, Alpha filed the Complaint, this time in the Northern District of California. The Complaint alleges that Zynga wrongfully refused to register, or issue a certificate for, the shares Alpha allegedly purchased from Mr. Trader pursuant to the and November SPA. (¶¶ 1-3.) Alpha also claims, on information and belief, that Mr. Trader provided Zynga with a legal opinion. (¶¶ 6, 58.) On the basis of these allegations, Alpha asserts four counts against Zynga: (1) Mandatory Injunction, seeking an order compelling Zynga "to accept the TroyGould PC Legal Opinion provided by [Mr.] Trader, to register the Shares in Alpha's corporate name and to issue Alpha a certificate for the Shares" (¶ 80); (2) Declaratory Judgment, seeking a declaration that "Trader provided Zynga with a satisfactory legal opinion" and that "Zynga is obliged to authorize the transfer of Shares" to Alpha (¶ 85); (3) Intentional Interference with Prospective Business Advantage (¶¶ 90-93); and (4) Tortious Interference with Contract (¶¶ 104-107).

This latest complaint continues to suffer from many of the same deficiencies as the previous complaints. Notably, the Complaint fails to mention that Alpha agreed to be bound by and signed the November Representation Letter, which released Zynga of any liability relating to the transaction. In addition, although the Complaint alleges that Alpha agreed to be bound by the restrictions in the Exercise Agreement between Mr. Trader and Zynga and that, on information and belief, Mr. Trader provided a legal opinion to Zynga, it fails to allege (1) that the proposed transaction between Alpha and Mr. Trader complies with all applicable securities laws (in particular, California securities laws), as required by paragraph 9.5; (2) that Alpha provided Zynga with a legal opinion in form and substance satisfactory to the Company, as required by paragraphs 6.1 and 12.1 of the Exercise Agreement and section 2.2 of the November SPA; or (3) that the transaction between Alpha and Mr. Trader was consummated within 120 days of the notice, as required by paragraph 9.5 of the Exercise Agreement.

## IV. ARGUMENT

### A. Applicable Legal Standards

A court must dismiss a claim under Rule 12(b)(6) when "there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). While a court must accept all well-pleaded factual allegations as true, it need not consider unsupported, conclusory allegations. *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996). Nor should a court accept legal or factual allegations based on unwarranted deductions or unreasonable inferences, or allegations that contradict materials properly subject to judicial notice. *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). The Supreme Court clarified these standards to confirm that a court should not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Dismissal is appropriate where the facts as alleged do not amount to a plausible claim. *Id.* at 1949-50.

### B. All of Alpha's Claims Are Barred by Alpha's Express Waiver of Liability

All of Alpha's claims fail because Alpha expressly agreed to waive any liability that might flow to Zynga due to the failure of the proposed transaction between Alpha and Mr. Trader to consummate for any reason. For a waiver of liability clause to be enforceable, it must be clear, unambiguous and explicit. *Madison v. Super. Ct.*, 203 Cal. App. 3d 589, 597-98 (1988). As described above, Alpha signed the November SPA, which states that "Purchaser acknowledges and agrees that it is bound by . . . the provisions of the Representation Letter." (Kaban Decl., Ex. C ¶ 5.2.) Alpha also signed the November Representation Letter in which Alpha expressly acknowledged and agreed that:

> The Company shall have no liability to Purchaser [*i.e.* Alpha] for the failure of the transactions contemplated by the Agreement to be consummated for any reason, including, the failure of Purchaser or Seller [*i.e.* Mr. Trader] to deliver requested opinions or additional documents to the Company as contemplated by Sections 2.2 and 2.3 of the Agreement

(*Id.*, Ex. D ¶ (vi).) Because the language above is clear, unambiguous and explicit, the waiver of liability is enforceable. In fact, Alpha now asserts the exact claims the waiver anticipates and was meant to prevent. The waiver protects Zynga from suit by Alpha if Mr. Trader fails to comply

with the requirements of Section 2.2 of the November SPA or the conditions of the Exercise Agreement. Accordingly, the Court should dismiss the Complaint. *Coates v. Newhall Land & Farming, Inc.*, 191 Cal. App. 3d 1, 7 (1987) ("By an advance waiver of liability, a potential plaintiff promises not to exercise the right to sue for harm caused in the future by the wrongful behavior of a potential defendant, eliminating a remedy for wrongdoing."); *Christakis v. Mark Burnett Prods.*, No. CV 08-6864-GW(JTLx), 2009 WL 1248947, at *4 (C.D. Cal. Apr. 27, 2009).

### C. The Court Should Dismiss the Complaint Because Alpha Fails to State a Claim for Which Relief May Be Granted

Even if the Court disregards Alpha's express waiver of liability, each of the four separate claims against Zynga would fail for the same fundamental reason: Alpha has failed to allege Zynga was obligated to transfer the shares under the terms of the Exercise Agreement.

#### 1. Alpha's Claims for Injunctive and Declaratory Relief Fail

The crux of Alpha's first two claims is that Zynga's failure to register the transfer of Mr. Trader's shares to Alpha as contemplated by the November SPA is somehow wrongful and that, as a result, the Court should declare and issue an injunction requiring Zynga to register the shares in Alpha's name. First, Alpha fails to allege a valid cause of action in connection with its request for a mandatory injunction. A mandatory injunction is merely a type of remedy and not an independent cause of action. *Batt v. City & Cnty. of San Francisco*, 155 Cal. App. 4th 65, 82 (2007) (citing *Shell Oil Co. v. Richter*, 52 Cal. App. 2d 164, 168 (1942) ("Injunctive relief is a remedy and not, in itself, a cause of action, and a cause of action must exist before injunctive relief may be granted.")). As a result, Alpha's claim for mandatory injunction should be dismissed.

Second, Alpha fails to adequately plead a claim for declaratory judgment. As an initial matter, federal courts do not have a duty to grant declaratory judgment. *Leadsinger, Inc. v. BMG Music Publ'g,* 512 F.3d 522, 533 (9th Cir. 2008). Rather it is within the discretion of the Court to dismiss a declaratory judgment action. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). A court should dismiss a declaratory judgment action if the "controversy" between the parties does not have "sufficient immediacy and reality to warrant the issuance of a declaratory judgment."

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). Further, a declaratory judgment action must be dismissed if the substantive claims upon which the declaratory judgment or injunction action are premised fail to state a claim. *Leadsinger, Inc. v. BMG Music Publ'g,* 429 F. Supp. 2d 1190, 1192-93 (C.D. Cal. 2005). In this case, there is no issue of "sufficient immediacy and reality" to warrant a declaratory judgment as Alpha fails to allege that Zynga was under any legal obligation to transfer the shares.

Alpha concedes that Mr. Trader acquired his shares pursuant to the Exercise Agreement, which expressly provides that Zynga has no obligation to effectuate or honor any transfer of shares if the transfer violates any provisions of that agreement. Because Alpha fails to allege that Mr. Trader has fulfilled all of the conditions precedent required to obligate Zynga to transfer the shares, the Complaint should be dismissed. *See World Health & Educ. Found. v. Carolina Cas. Ins. Co.*, 612 F. Supp. 2d 1089, 1094-96 (N.D. Cal. 2009) (dismissing declaratory judgment and breach of contract actions where plaintiff failed to allege that all of the conditions precedent had been met). Alpha fails to allege the satisfaction of several provisions of the Exercise Agreement.

    **a. Alpha Fails to Allege That The Proposed Transaction Complies with All Applicable Securities Laws**

*First*, Alpha fails to allege that the proposed transaction between Alpha and Mr. Trader complies with all applicable securities laws. Paragraph 9.5 provides that Mr. Trader only has the right to sell his shares if the sale "is effected in compliance with all applicable securities laws." (Kaban Decl., Ex. A.) Because the Complaint does not allege such compliance, it fails to plead any basis for a declaratory judgment that "Zynga is obliged to authorize the transfer of Shares in accordance with the November SPA and/or the August SPA." (¶ 85.) *See, e.g., CRV Imperial-Worthington, LP v. Gemini Ins. Co.*, 770 F. Supp. 2d 1070, 1073 (S.D. Cal. 2011).

This is not a mere technical failure. The purpose of this provision (as well as the provision requiring a legal opinion) is to prevent a scenario in which Zynga would be required to give effect to an illegal transaction, thus exposing itself to potential liability. There is a substantial question as to whether the transaction at issue in this case complies with California law. The question arises from the fact that Alpha and Mr. Trader were introduced through an

Internet website – SecondMarket.  (¶¶ 26, 27.)

Under California law, it is unlawful to sell securities unless the securities are "qualified" or unless the sale is "exempt." Cal. Corp. Code § 25130. As Zynga is not a public company, its shares are not qualified. Therefore, the proposed transaction between Alpha and Mr. Trader must be "exempt" to be lawful. The exemption applicable to the present proposed transaction requires that the seller not advertise his shares for sale. Specifically, California Corporations Code section 25104(a) provides that a stock transaction by a non-issuer (i.e., a shareholder) in a private company is considered exempt if the sale is by "the bona fide owner thereof for his or her own account [and] if the sale (1) is not accompanied by the publication of any advertisement and (2) is not effected by or through a broker-dealer in a public offering." The Code defines "Advertisement" as "any written or printed communication or any communication by means of recorded telephone messages or spoken on radio, television, or similar communications media, published in connection with the offer or sale of a security." Cal. Corp. Code § 25002. The Code also defines "Publish" as "publicly to issue or circulate by newspaper, mail, radio or television, or otherwise to disseminate to the public." Cal. Corp. Code § 25014.

SecondMarket provides a new Internet platform on which sales of private company stock can be arranged by allowing prospective buyers and sellers to post their interest and terms on the site. However, it is unclear whether such a transaction facilitated by SecondMarket would satisfy Section 25104(a). There are no cases addressing the issue, and the California Department of Corporations has not yet provided any guidance. Some earlier statements by the Department of Corporations, however, raise serious concern. For example, the Commissioner of the Department of Corporations issued an interpretive order in 1996, regarding a different statutory exemption, in which he concluded that, as a general rule, an offer to sell or purchase stock "made by communication on a proprietary or electronic delivery system such as the World Wide Web, otherwise known as the Internet, . . . are 'advertisements' (Section 25002) . . . ." Cal. Dept. of Corp., *Commissioner's Opinion 96/2C*, File No. OP 6600, at 2 (Oct. 17, 1996) (available at http://www.corp.ca.gov/press/pdf/opinions/OP6600.pdf). Similarly, there is a separate Commissioner's Release from 1996, which states "such 'offers' made over the Internet are

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

11.

DEFENDANT ZYNGA INC.'S NOTICE OF MOTION
AND MOTION TO DISMISS; CV 11-3500 JSW

1   'advertisements' (Section 25002). . . ." Commissioner's Release: 100-C *Offers of Securities Made*
2   *on the Internet* (Nov. 5, 1996) (available at http://www.corp.ca.gov/Commissioner/Releases/100-
3   C.asp.)[5]   If SecondMarket's posting of Mr. Trader's shares on its site constitutes an
4   "advertisement" as these authorities suggest, the sale contemplated by the November SPA would
5   run afoul of California law.

Given the state of the law, the Complaint's failure to allege affirmatively that the transaction complies with California state law is telling. This failure is fatal to Alpha's claims.

        **b.    Alpha Fails to Allege That a Final Legal Opinion Was Provided to Zynga or That a Legal Opinion Was Provided That Was Satisfactory to Zynga**

*Second*, Alpha does not allege that Mr. Trader, or anyone else, provided Zynga with a final, signed legal opinion. Alpha alleges on information and belief that Mr. Trader provided Zynga "a legal opinion from TroyGould PC stating that the offer and sale of the Shares is being made pursuant to Rule 144 of the Securities Act of 1933, as amended, and will be in compliance with all applicable federal and state securities laws . . . ." (¶ 58.) It does not, however, contend that Mr. Trader ever provided a final signed opinion. More importantly, the documents Mr. Trader provided on November 30, 2010, of which the Court may properly take judicial notice, show that Mr. Trader never provided a signed and complete legal opinion. (Kaban Decl., Exs. B & E.) Further, Alpha never alleges that Mr. Trader or anyone else subsequently provided a signed and complete legal opinion. Thus, Mr. Trader failed to comply with the requirements of the Exercise Agreement, and Zynga was not obligated to transfer the shares.

*Third*, Alpha does not allege that either Mr. Trader or Alpha provided a legal opinion to Zynga that was satisfactory in form and substance to the Company as required by paragraphs 6.1 and 12.1 of the Exercise Agreement. (Kaban Decl., Ex. A.) Zynga's obligation to transfer the shares is derived from the Exercise Agreement. Such an obligation would arise only after Mr. Trader provided a legal opinion "in form and substance satisfactory to the Company." (*Id.*)

---

[5] To be clear, Zynga does not take a position, at this point, one way or the other regarding whether the transaction complies with California Corporations Code § 25014. The point is that there is at least a significant question whether it does.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

12.

DEFENDANT ZYNGA INC.'S NOTICE OF MOTION
AND MOTION TO DISMISS; CV 11-3500 JSW

Alpha has not alleged that such an opinion was provided to Zynga.

### c. Alpha Fails to Allege That the Transaction Was Completed Within the Required Time Period

And *fourth*, there is also a condition precedent that the transaction be consummated within 120 days of the notice. (Kaban Decl., Ex. A ¶ 9.5.) Alpha alleges that Mr. Trader provided Zynga with Notice of the Proposed Transfer on August 26, 2010. (¶ 32.) Thus, by the terms of the Exercise Agreement, if the transaction was not consummated and/or the shares were not transferred to Alpha by December 24, 2010 (120 days after the notice), then Mr. Trader needed to provide Zynga with a new notice and re-offer Zynga the right of first refusal. (Kaban Decl., Ex. A ¶ 9.5.) Section 2.1 of the November SPA states that "[t]he consummation of the sale and purchase of the Shares shall occur on the date upon which all deliveries by Seller set forth in Section 2.2 . . . all deliveries by Purchaser set forth in Section 2.3 . . . and any other conditions to closing have been made . . . ." (*Id.*, Ex. C.) At the very least, Alpha must allege that executed versions of all the documents as well as the other deliverables called for by section 2.2 and 2.3 of the November SPA were provided to Zynga before December 24, 2010. It has not done so. In particular, Alpha has not alleged that Mr. Trader provided Zynga with either a signed and complete legal opinion or a legal opinion in "form and substance satisfactory to the Company" within the time period required.

Each of these omissions is fatal to Alpha's claims.

### 2. Alpha's Claim for Intentional Interference with Prospective Economic Advantage Fails

Alpha's claim for intentional interference with prospective economic advantage also fails. To state a claim for intentional interference under California law, a plaintiff must allege: (1) an economic relationship between plaintiff and a third party; (2) defendant's knowledge of the relationship; (3) intentional acts by defendant to disrupt the relationship; (4) actual disruption; and (5) economic harm proximately caused by defendant. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (Cal. 2003). A plaintiff must also plead that "the defendant engaged in an act that is wrongful apart from the interference itself." *Id.* at 1154 (citations omitted). As the California Supreme Court has held, "The tort of intentional interference with

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

13.

DEFENDANT ZYNGA INC.'S NOTICE OF MOTION
AND MOTION TO DISMISS; CV 11-3500 JSW

prospective economic advantage is not intended to punish individuals or commercial entities for their choice of commercial relationships or their pursuit of commercial objectives, unless their interference amounts to independently actionable conduct." *Id.* at 1158-59. An act is only "independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Id.* at 1159.

Alpha fails to state a claim because it does not adequately allege that any action by Zynga was wrongful. Alpha fails to identify any "constitutional, statutory, regulatory, common law, or other determinable legal standard" of which Zynga's conduct allegedly runs afoul. Zynga's mere failure to record the transaction does not satisfy this statement. Further, as discussed above, the Complaint fails to allege that each of the conditions precedent to Zynga's obligations was satisfied. Thus, as currently pleaded, Zynga's failure to transfer the shares is nothing more than the exercise by Zynga of its rights under the Exercise Agreement with Mr. Trader. There is no legal support for the proposition that such conduct could constitute tortious interference. As such, Alpha fails to plead facts sufficient to show that any action or inaction by Zynga was wrongful, and its claim for intentional interference should therefore be dismissed. *Id*. at 1154 (requiring plaintiff to plead that "defendant's acts are wrongful apart from the interference").

### 3. Alpha's Claim for Tortious Interference with Contract Fails

Alpha also fails to state a claim for tortious interference with contract because it does not allege that Zynga induced Mr. Trader to breach his contract with Alpha. To state a claim for intentional interference with contract, a plaintiff must allege: (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contract; (4) actual breach or disruption of the contract; and (5) resulting damage. *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 55 (1998). To satisfy the third element regarding defendant's intentional act, plaintiff must plead that defendant knew "that the interference [with contract] is certain or substantially certain to occur as a result of his action." *Korea Supply*, 29 Cal. 4th at 1155-56.

Alpha alleges that Zynga, by "intentionally, arbitrarily and unreasonably refusing to accept the TroyGould PC Legal Opinion provided to it by Trader, acted intentionally and

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

14.

DEFENDANT ZYNGA INC.'S NOTICE OF MOTION
AND MOTION TO DISMISS; CV 11-3500 JSW

1  unreasonably in order to induce Trader to breach his obligations under Section 2.2 of the November SPA (or Section 2.3 of the August SPA, as applicable)." (¶ 105.) This theory makes no sense. *First*, if Mr. Trader had provided Zynga with a satisfactory legal opinion, then Mr. Trader would not have breached his contract. No claim for tortious interference can stand if there was no breach. *Second*, if Mr. Trader failed to provide a satisfactory legal opinion, and thereby breached the November SPA, Alpha alleges no facts upon which the Court could conclude that Zynga induced Mr. Trader to provide the unsatisfactory opinion. Alpha has not – and could not consistent with its Rule 11 obligations – allege that Zynga somehow colluded with Mr. Trader to prevent the provision of a satisfactory opinion. Intentional interference with contract requires an "intentional act" by the defendant, that is that defendant knew or was substantially certain that its act would induce a breach. *See Korea Supply*, 29 Cal. 4th at 1155-56. Alpha has failed to allege any act by Zynga prior to the breach, much less that Zynga knew or was substantially certain that its "act" would induce Mr. Trader to breach his contract.

Finally, there is an important additional principle here: Zynga's contractual rights. Zynga had a right, under the Exercise Agreement, to obtain from Mr. Trader a legal opinion in form and substance satisfactory to Zynga. It is hard to imagine how Zynga's exercise of its express rights based on a contract with Mr. Trader formed in 2008, could result in a claim for tortious interference based on a separate contract Mr. Trader entered into with a third-party in 2010. Accordingly, Alpha has failed to state a claim for tortious interference with contract.

## V. CONCLUSION

For the foregoing reasons, Zynga respectfully requests that each of the claims asserted against it in the complaint be dismissed with prejudice.

Dated: August 5, 2011                COOLEY LLP

                                     By  /s/ *John C. Dwyer*
                                        John C. Dwyer (136533)
                                        Attorneys for Defendant
                                        ZYNGA INC.

957302/HN