**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALPHA INVESTMENT, LLC, | |
| Plaintiff, | No. C 11-03500 JSW |
| v. | |
| ZYNGA, INC. and ANDREW TRADER, | **ORDER GRANTING MOTIONS TO DISMISS** |
| Defendants. | |

Now before the Court are the motions to dismiss filed by defendant Zynga, Inc. ("Zynga") and Andrew Trader ("Trader"), as well as Trader's motion to intervene on the mandatory injunction claim. The Court has considered the parties' papers, relevant legal authority, and it finds the matter suitable for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b). Accordingly, the hearing set for March 16, 2012 is VACATED, and the Court GRANTS Zynga's and Trader's motions to dismiss. The Court denies Trader's motion to intervene as moot.[1]

**BACKGROUND**

This action by plaintiff Alpha Investment, LLC ("Alpha") arises out of an agreement Alpha made with Trader to purchase one million shares of Zynga stock. Because Zynga's stock

---

[1] The Court GRANTS Zynga's and Trader's Requests for Judicial Notice ("RJN"). *See* Fed. R. Evid. 201.
   The Court notes that Alpha seeks to incorporate six pages of its statement of facts into its brief in opposition to Zynga's motion to dismiss. Alpha then also seeks to incorporate pages from its brief in opposition to Zynga's motion into its opposition to Trader's motion. Alpha's incorporation of pages from other briefs is an attempt to avoid this Court's page limits. Although the Court will not strike Alpha's excess pages at this time, Alpha is on notice that any further attempts to avoid this Court's Standing Orders, without receiving leave of Court in advance, will be sanctioned.

was not yet registered, Alpha was required to comply with certain conditions precedent in order to acquire the stock.[2]

Alpha and Trader were connected through SecondMarket. (Compl., ¶ 27.) On August 26, 2010, Alpha and Trader entered into a Stock Purchase Agreement ("August SPA"), pursuant to which Alpha agreed to purchase one million shares of Zynga Class A Common Stock from Trader. (*Id*., ¶ 28.) Alpha placed the agreed upon purchase amount, $12,870,000 into an escrow account. The August SPA provided that Alpha agreed to be bound by and comply with the limitations on transfer of the shares as set forth in the Stock Option Exercise Agreement, dated January 3, 2008, ("Exercise Agreement") between Zynga and Trader. (*Id*., ¶ 30.)

The Exercise Agreement required, *inter alia*,

> **5. Restricted Securities.**
> 5.1 <u>No Transfer Unless Registered or Exempt</u>. [Trader] understands that [Trader] may not transfer any Shares unless such Shares are registered under the Securities Act or qualified under applicable state securities laws or unless, in the opinion of counsel to [Zynga], exemptions from such registration and qualification requirements are available. . . . [Trader] has also ....been advised that exemptions from registration and qualification may not be available or may not permit [Trader] to transfer all or any of the Shares in the amounts or at the times proposed by [Trader].
> ...
> **6. Restrictions on Transfers.**
> 6.1 <u>Disposition of Shares</u>. [Trader] hereby agrees that [Trader] shall make no disposition of the Shares (other than as permitted by this Exercise Agreement) unless and until: ...
> (b) [Trader] shall have complied with all requirements of this Exercise Agreement applicable to the disposition of the Shares;
> (c) [Trader] shall have provided [Zynga] with written assurances, in form and substance satisfactory to counsel for [Zynga], that (i) the proposed disposition does not require registration of the Shares under the Securities Act or (ii) all appropriate actions necessary for ... any exemption from registration . . . have been taken; and
> (d) [Trader] shall have provided [Zynga] with written assurances, in form and substance satisfactory to [Zynga], that the proposed disposition will not result in the contravention of any transfer restrictions applicable to the Shares pursuant to the [California Corporations Code and any rules or regulations promulgated thereunder].

(Declaration of Jeffrey M. Kaban ("Kaban Decl."), Ex. A.)

---

[2] Subsequent to Alpha filing this action, Zynga registered its stock on December 15, 2011. (Trader's RJN, Ex. A.)

The Exercise Agreement further provides that Zynga has a right of first refusal to purchase the shares before the shares can be sold or transferred to a third-party. (*Id*., Ex. A. at ¶ 9.) Pursuant to paragraph 9.1, Trader must deliver to Zynga notice of any proposed transfer of shares. (*Id*., Ex. A. at ¶ 9.1.) Paragraph 9.5 then provides that if Zynga does not exercise its right of first refusal, Trader may proceed with the proposed transaction, but only if: "(i) such sale or other transfer is consummated within 120 days after the date of the Notice, [and] (ii) any such sale or other transfer is effected in compliance with all applicable securities laws ..." (*Id*., Ex. A. at ¶ 9.5.) Paragraph 9.5 also provides that if the shares are not transferred within 120 days of the notice, a new notice must be given to Zynga and Zynga must be offered the right of first refusal again. (*Id*.)

The Exercise Agreement provides that Zynga:

> will not be required (i) to transfer on its books any Shares that have been sold or otherwise transferred in violation of any of the provisions of this Exercise Agreement or (ii) to treat as owner of such Shares, or to accord the right to vote or pay dividends to any purchaser or other transferee to whom such Shares have been so transferred.

(*Id*., Ex. A. at ¶ 12.3.)

On August 26, 2010, Trader provided Zynga and counsel for Zynga with a notice of the proposed transfer. (Compl., ¶ 32.) On November 23, 2010, Alpha signed an amended Stock Purchase Agreement ("November SPA") and a related representation letter (the "November Representation Letter"). (*Id*., ¶ 50.) The November SPA states that, prior to the closing date, Trader will provide Zynga, *inter alia*:

> an opinion, in form and substance satisfactory to [Zynga], from counsel to [Trader] satisfactory to [Zynga] that states that the offer and sale of the Shares is being made pursuant to Rule 144 of the Securities Act of 1933, as amended . . . and will be in compliance with all applicable federal and state securities laws ... any other agreement or document reasonably required by [Zynga] in connection with the transfer of the Shares.

(Kaban Decl., Ex. C at ¶ 2.2.) The November SPA further provides that Alpha is bound by, and the Shares will be subject to, the Exercise Agreement between Zynga and Trader and the Representation letter. (*Id*., Ex. C at ¶¶ 5.1, 5.2.)

The Representation Letter provides that both Alpha and Trader agree, *inter alia*:

3

> [Zynga] shall have no liability to [Alpha] for the failure of the transactions contemplated by the Agreement to be consummated for any reason, including, the failure of [Alpha] or [Trader] to deliver requested opinions or additional documents to the Company as contemplated by Sections 2.2 and 2.3 of the Agreement

(Kaban Decl., Ex. D.)

Alpha alleges that on September 29, 2010, Zynga emailed some proposed transfer instructions and recite the following excerpt:

> Pursuant to Section 2.2.of the Stock Purchase Agreement, you must obtain a legal opinion that states that the offer and sale of your shares is being made pursuant to Rule 144 of the Securities Act of 1933, as amended, and will be in compliance with all applicable federal and state securities laws. A draft of such opinion should be forwarded to our outside legal counsel... .

(Compl., ¶ 57.) Alphas submitted a copy of the proposed transfer instructions. (Declaration of Andrew H. Reynard ("Reynard Decl."), Ex. A.) The document further provides an address for delivery of the "draft opinion" and separate addresses for delivery of the "executed opinion." (*Id*., Ex. A at p. 2.)[3]

Alpha further alleges, on information and belief, that Trader satisfied the requirements of Paragraph 2.2. of the November SPA, including that Trader delivered to Zynga "a legal opinion from TroyGould PC stating that the offer and sale of the Shares is being made pursuant to Rule 144 of the Securities Act of 1933, as amended, and will be in compliance with all applicable federal and state securities laws." (Compl., ¶ 58.) The opinion letter from TroyGould PC was not dated or signed. (Kaban Decl., Ex. E.)

The Court shall address specific additional facts in the remainder of this Order.

## ANALYSIS

**A.     Applicable Legal Standards for Motion to Dismiss.**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. The complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint

---

[3] Alpha submits this document as an attachment to its counsel's declaration. Neither Zynga or Trader objected to the Court considering this document in connection with the motions to dismiss. Because this document was relied upon but not attached to the complaint, and the authenticity of this document has not been challenged, the Court will consider this document. *Zucco Partners*, 552 F.3d at 990.

4

1  are taken to be true. *Sanders v. Kennedy,* 794 F.2d 478, 481 (9th Cir. 1986). The Court may
2  consider the facts alleged in the complaint, documents attached to the complaint, documents
3  relied upon but not attached to the complaint, when the authenticity of those documents is not
4  questioned, and other matters of which the Court can take judicial notice. *Zucco Partners LLC*
5  *v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009).

6      Federal Rule of Civil Procedure 8(a) requires only "a short and plain statement of the
7  claim showing that the pleader is entitled to relief." Even under Rule 8(a)'s liberal pleading
8  standard, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'
9  requires more than labels and conclusions, and a formulaic recitation of the elements of a cause
10 of action will not do." *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007) (citing
11 *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Pursuant to *Twombly*, a plaintiff must not merely
12 allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief
13 that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff
14 pleads factual content that allows the court to draw the reasonable inference that the defendant
15 is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing
16 *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a probability requirement,
17 but it asks for more than a sheer possibility that a defendant has acted unlawfully. ... When a
18 complaint pleads facts that are merely consistent with a defendant's liability, it stops short of
19 the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550
20 U.S. at 556-57) (internal quotation marks omitted).

21 **B.    Zynga's Motion to Dismiss.**

22     Zynga argues that all of Alpha's claims against it fail based on Alpha's failure to plead
23 that it satisfied the conditions precedent for any stock transfer. The Court agrees. First, Alpha
24 fails to plead that its proposed purchase of Zynga's shares would be "in compliance with all
25 applicable securities laws." (Kaban Decl., Ex. A at ¶ 9.5.)

26     Second, taking into consideration the documents of which the Court may take judicial
27 notice, Trader did not provide a completed legal opinion letter as required. (*Id.*, Ex. C at ¶ 2.2.)
28 The opinion letter from TroyGould PC alleged in the complaint was only an unsigned, undated,

draft legal opinion. (Compl., ¶ 58; Kaban Decl., Ex. E.) Plaintiff argues, based on Zynga's proposed transfer instructions, that only a draft letter was required. However, Plaintiff does not allege, or submit and documents showing, that the alleged *proposed* transfer instructions altered the written agreements requiring "an opinion, in form and substance satisfactory to [Zynga], from counsel to [Trader] satisfactory to [Zynga] that states that the offer and sale of the Shares is being made pursuant to Rule 144 of the Securities Act of 1933, as amended . . . and will be in compliance with all applicable federal and state securities laws... ." (Kaban Decl., Ex. C. at ¶ 2.2.) Moreover, upon review of the proposed transfer instructions submitted by Alpha, Zynga was merely asking to review a draft of the legal opinion letter at least ten days prior to the date of the intended transfer. By providing separate instructions for delivery of a "draft opinion" and an "executed opinion," the transfer instructions make clear that the request for a draft legal opinion was an additional requirement that did not replace the requirement to provide an executed legal opinion letter. (Reynard Decl., Ex. A.) The transfer instructions do not appear to excuse the requirement to provide a formal, executed legal opinion letter. Therefore, the Court finds that Alpha fails to allege this condition precedent was satisfied.

To the extent Alpha contends only a draft letter was required, Alpha may amend its complaint if it can allege facts in good faith, or attach documents sufficient to show, that the requirement to provide a legal opinion letter had been changed. Alternatively, Alpha may amend its complaint if it can allege facts in good faith that Trader provided a non-draft legal opinion letter to Zynga.

Third, the transaction was required to be completed within 120 days after the Notice was sent to Zynga. Alpha does not allege that the transaction was completed within 120 days. Instead, Alpha argues that it completed all the required conditions precedent and that Zynga unreasonably delayed consummation of the transaction. (Opp. to Zynga's Mot. at 9.) However, as discussed above, Alpha has not yet alleged that it did complete all of the conditions precedent. Accordingly, the Court finds that Alpha fails to allege that the transaction was completed within 120 days or allege facts which, if true, show that the 120 day requirement was

6

1 or should be excused. Accordingly, the Court grants Zynga's motion to dismiss. However, the
2 Court will provide Alpha with leave to amend to cure the above described defects.

3 Nevertheless, with respect to Alpha's claim for a mandatory injunction, injunctive relief
4 is merely a remedy, not an independent cause of action. *See Hafiz v. Greenpoint Mortgage,*
5 *Inc.*, 652 F. Supp. 2d 1039, 1043 (N.D. Cal. 2009) (citing *Boeing Co. v. Cascade Corp.,* 207
6 F.3d 1177, 1192 (9th Cir. 2000)); *see also Cox Communication PCS, LP v. City of San Marco*,
7 204 F. Supp. 2d 1272, 1283 (S.D. Cal. 2002) ("Injunctive relief, like damages, is a *remedy*
8 *requested by the parties, not a separate cause of action*.") (emphasis in original); *City of South*
9 *Pasadena v. Dept. of Transp.*, 29 Cal. App. 4th 1280, 1293 (1994) ("Injunctive relief is a
10 remedy, not a cause of action."). Therefore, Alpha's leave to amend does not include leave to
11 plead a separate claim for an injunction. Because Alpha may not plead an independent claim
12 for an injunction, Trader's motion to intervene as a defendant on that claim is denied as moot.

### C. Trader's Motion.

14 Trader moves to dismiss Alpha's fourth claim, a breach of contract claim pled in the
15 alternative against Trader. Earlier in the complaint, Alpha pleads that Trader complied with all
16 of the conditions precedent to the transaction, including the requirement to provide a
17 satisfactory legal opinion letter to Zynga. In the alternative, Alpha pleads that:

> To the extent that Trader did not provide Zynga with a satisfactory legal opinion in the TroyGould PC Legal Opinion, or failed to satisfy any other requirements for delivery Zynga under Section 2.2 of the November SPA (or Section 2.3 of the August SPA, as applicable), Trader failed to meet his obligations and therefore breached the November SPA and/or August SPA.

21 (Compl., ¶ 97.) Pursuant to Federal Rule of Civil Procedure 8(d)(3), a party may "state as many
22 separate claims or defenses it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3).
23 However, in light of Federal Rule of Civil Procedure 11, courts have held that "a pleader may
24 assert contradictory statements of fact only when legitimately in doubt about the facts in
25 question." *American Int'l. Adjustment Co. v. Galvin*, 86 F.3d 1455, 1461 (7th Cir. 1996); *see*
26 *also 2004 Stuart Moldaw Trust v. XE L.I.F.E., LLC*, 642 F. Supp. 2d 226, 240 (S.D.N.Y 2009);
27 *Violet Blue v. Johnson*, 2008 WL 941959, *7 (N.D. Cal. Apr. 7, 2008). Here, because the

1 alleged facts concern actions by other parties, Alpha is legitimately in doubt as to whether
2 Trader did in fact provide a satisfactory legal opinion letter to Zynga.

3 However, Alpha further pleads that it has complied with all closing conditions and
4 requirements under the November and August SPAs. (Compl., ¶ 96.) As discussed above, a
5 requirement for the proposed transaction was that it be "in compliance with all applicable
6 securities laws." (Kaban Decl., Ex. A at ¶ 9.5.) Alpha has not alleged that this requirement has
7 been satisfied. Accordingly, although Alpha may plead this claim in the alternative, it has not
8 yet pled sufficient facts. Therefore, the Court dismisses this claim, but will provide Alpha with
9 leave to amend.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Zynga's and Trader's motion to dismiss and DENIES Trader's motion to intervene as moot. With the exception of Alpha's claim for a mandatory injunction, the Court provides Alpha with leave to amend. Alpha shall file its amended complaint, if any, within twenty days of the date of this Order. If Alpha files an amended complaint in accordance with this Order, Zynga and Trader shall either file answers or move to dismiss within twenty days of service of the amended complaint. If Alpha does not amend its complaint, this action will be dismissed.

The Court FURTHER ORDERS that the case management conference is VACATED and will be reset, if necessary, at a later date.

**IT IS SO ORDERED.**

Dated: March 12, 2012

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE