**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ALPHA INVESTMENT, LLC,

    Plaintiff,

v.

ZYNGA, INC. and ANDREW TRADER,

    Defendants.

No. C 11-03500 JSW

**ORDER REGARDING MOTIONS TO DISMISS, MOTION TO STRIKE AND MOTION TO INTERVENE**

Now before the Court are the motions to dismiss filed by defendant Zynga, Inc. ("Zynga") and by Andrew Trader ("Trader"), as well as Trader's motion to strike and his motion to intervene. The Court has considered the parties' papers, relevant legal authority, and it finds the matter suitable for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b). Accordingly, the hearing set for June 15, 2012 is VACATED, and the Court grants Trader's motion to intervene, denies Zynga's motion to dismiss, denies Trader's motions to dismiss, and grants in part and denies in part Trader's motion to strike.[1]

**BACKGROUND**

This action by plaintiff Alpha Investment, LLC ("Alpha") arises out of an agreement Alpha made with Trader to purchase one million shares of Zynga stock. Because Zynga's stock was not yet registered at the time of the agreement, Alpha was required to comply with certain conditions precedent in order to acquire the stock. However, subsequent to Alpha filing this

---

[1] The Court GRANTS Trader's Request for Judicial Notice ("RJN"). *See* Fed. R. Evid. 201.

action, Zynga registered its stock on December 15, 2011. Zynga's stock is now publicly traded without restrictions.

On March 12, 2012, the Court dismissed Alpha's complaint based on its failure to plead that it had satisfied all of the conditions precedent for any stock transfer. Specifically, Alpha failed to plead that its proposed purchase of Zynga's shares would be "in compliance with all applicable securities laws" as required by the Stock Option Exercise Agreement, dated January 3, 2008 ("Exercise Agreement"). (First Amended Complaint ("FAC"), Ex. B at ¶ 9.5.) Additionally, taking into consideration the documents of which the Court took judicial notice, the Court found that Trader did not provide a completed legal opinion as required. (*Id*., Ex. E (November Stock Purchase Agreement) at ¶ 2.2.) The Court provided Alpha leave to amend to allege that only a draft letter was required or that Trader did provide a non-draft legal opinion letter to Zynga. The Court also found that Alpha failed to allege that the transaction was completed within 120 days as required, or allege facts which, if true, would show that the 120 day requirement was or should have been excused.

Alpha filed an amended complaint and Zynga and Trader now move to dismiss the FAC. The Court shall address specific additional facts in the remainder of this Order.

## ANALYSIS

**A.     Trader's Motion to Intervene.**

Trader moves to intervene pursuant to Federal Rule of Civil Procedure 24 on Alpha's second, third, fourth and fifth claims on the grounds that Alpha seeks a mandatory injunction to require Trader to transfer his Zynga Stock. Trader wants to intervene to enable him to move to strike Alpha's request for a mandatory injunction. Alpha does not oppose the motion to intervene. Accordingly, the Court grants Trader's motion to intervene as unopposed.

**B.     Trader's Motion to Strike.**

Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "Immaterial matter "is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Cal. Dept. of Toxic Substance Control v. ALCO Pac.,*

*Inc.*, 217 F. Supp. 2d 1028, 1032 (C.D. Cal. 2002) (internal citations and quotations omitted). Impertinent material "consists of statements that do not pertain, or are not necessary to the issues in question." *Id*. Motions to strike are regarded with disfavor because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice. *Colaprico v. Sun Microsystems Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991). "[M]otions to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Id.* Ultimately, the decision as to whether to strike allegations is a matter within the Court's discretion. *Id*.

Trader moves to strike Alpha's request for a mandatory injunction and for attorneys' fees. Trader argues that Alpha's request for a mandatory injunction requiring the transfer of the shares should be stricken because Alpha may be compensated by monetary damages. It is undisputed that the Class B stock Trader currently possesses is entitled to seven votes per share, whereas the Class A stock that Alpha would be able to purchase on the open market is entitled to one vote per share. Trader makes several arguments as to why this difference is immaterial and should be disregarded by the Court. However, it is not absolutely clear at this procedural stage that the difference actually is immaterial or is compensable by monetary damages. Therefore, the Court denies Trader's motion to strike with respect to Alpha's request for a mandatory injunction.

Trader also moves to strike Alpha' request for attorney's fees on the grounds that Plaintiff has not alleged any claim which would support an award of attorney's fees. California Civil Code section 1021 provides, in pertinent part, "[e]xcept as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties... ." Where, as here, the claim is premised on a written agreement, attorney's fees may only be awarded upon the pleading and proof of an express contractual provision authorizing such fees. *Robinson & Wilson, Inc. v. Stone*, 35 Cal. App. 3d 396, 413 (1975).

Trader argues, and Alpha does not dispute, that the agreement between them does not provide for attorneys' fees. Instead, Alpha argues that the motion to strike is premature and that

Alpha is entitled to an opportunity to determine, through discovery, whether there is a basis for attorney's fees. However, Alpha brings a breach of contract claim against Trader based on a written agreement. Alpha attached the agreement to its complaint. The agreement does not provide for attorney's fees. Alpha does not elucidate, and the Court cannot fathom, what discovery Alpha could conduct which would demonstrate an entitlement to recover attorney's fees under this agreement. Accordingly, the Court grants Trader's motion to strike with respect to Alpha's request for attorney's fees.

**C.     Zynga's and Trader's Motions to Dismiss.**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. The complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders v. Kennedy,* 794 F.2d 478, 481 (9th Cir. 1986). The Court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint, when the authenticity of those documents is not questioned, and other matters of which the Court can take judicial notice. *Zucco Partners LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009).

Federal Rule of Civil Procedure 8(a) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Even under Rule 8(a)'s liberal pleading standard, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. ... When a

4

1 complaint pleads facts that are merely consistent with a defendant's liability, it stops short of
2 the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550
3 U.S. at 556-57) (internal quotation marks omitted).

4 Alpha now alleges that the transaction was in compliance with applicable federal and
5 California securities laws. (FAC, ¶¶ 62, 63.) With respect to Trader's requirement to provide a
6 legal opinion letter, Alpha clarifies that Trader's contractual obligation was to provide a final,
7 signed letter. (FAC, ¶ 3.) Despite this obligation, Trader only delivered an unsigned, undated
8 draft legal opinion from the TroyGould PC law firm. (*Id.*, ¶¶ 56, 67, Ex. I.) Moreover, while
9 the draft opinion letter purports to rely on attached certificates from SecondMarket and Trader,
10 Trader did not provide to Zynga the certificate from him. (*Id.*, ¶ 58, Ex. I.)

11 Alpha also alleges that the content of the draft legal opinion letter Trader did provide
12 from TroyGould PC was satisfactory, but that Zynga wrongfully told Trader that the assurances
13 in the draft legal opinion letter were not acceptable. (*Id.*, ¶ 6.) Trader believes that Zynga's
14 outside counsel rejected the content of the TroyGould draft legal opinion letter because of "its
15 reliance on statements by [Trader] and SecondMarket that there was no general solicitation or
16 general advertising or any publicly issued published advertisement in connection with the sale."
17 (*Id.*, ¶ 90, Ex. J.) Trader said that he contacted eight law firms "about providing this type of
18 opinion, and none would do it. They all said they had never seen such a requirement before."
19 (*Id.*, Ex. J.) Based on Trader's representation of Zynga's position, Alpha alleges that Zynga's
20 position was arbitrary and unreasonable, and induced Trader not to provide or chilled Trader
21 from providing a final, signed legal opinion. (*Id.*, ¶¶ 91, 92.)

22 Alpha alleges that on December 22, 2010, two days before the expiration of 120-day
23 period, a representative of SecondMarket told counsel for Alpha that he had spoken with Trader
24 and that Trader told the representative that Zynga had told him that they are not going to let any
25 transfer take place. (*Id.*, ¶ 66, Ex. K.) Alpha further alleges that the representative from
26 SecondMarket told him that Zynga is tempting Trader by promising some company-sponsored
27 liquidity program and, thus, Trader is a little conflicted. (*Id.*)

28

5

Now that Zynga's shares are available on the open market, Zynga has stated its original concerns regarding the transfer of the shares at issue here no longer apply. (*Id.*, ¶ 80(iii) (citing Docket Nos. 23 and 43).) In light of the fact that that Zynga's shares are being traded on NASDAQ, Zynga is taking the position that the shares are exempt from the California regulations related to registration and qualification of securities – the regulations which fueled Zynga's original concerns regarding the transfer. (*Id.*, ¶ 80(iii) (citing Docket No. 63).) Therefore, to the extent that the unregistered nature of the shares made it difficult to obtain a legal opinion that the transaction was in compliance with applicable federal and California securities laws, this obstacle no longer exists. Nevertheless, Trader has still not provided all of the documentation to Zynga which is required for the transfer. (*Id.*, ¶80(iii).) Alpha contends that Trader is in breach of the November SPA because he failed to provide Zynga a satisfactory legal opinion, failed to provide Zynga another notice of his proposed transfer to Alpha after the 120-day period expired, and failed to take further actions reasonably necessary to carry out the purposes and intent of the November SPA. (*Id.*, ¶ 80(i)-(iii).)[2]

Alternatively, Alpha alleges that Zynga's rejection of the content of the TroyGould draft legal opinion, and the reason Zynga rejected it, was unreasonable and effectively precluded Trader from complying with the requirement of providing a satisfactory legal opinion. (*Id.*, ¶¶ 91, 92, 100.) Alpha further alleges that Zynga had permitted transactions similar to the proposed transfer between Trader and Alpha in the third quarter of 2010, in the third quarter of 2009 and in February of 2010. (*Id.*, ¶¶ 100-102.) The substance of the TroyGould draft opinion was "at least as consistent with and in many respects even more expansive than the representations contained in legal opinions" Zynga had received and accepted in connection with these previous, similar sales. (*Id.*, ¶ 103.)

At this procedural stage, it is not clear whether the contract was not completed because: (1) Trader failed to provide a satisfactory, signed legal opinion letter, whether it was a signed

---

[2] Without any citation to a specific provision, Trader argues that under the Exercise Agreement, Trader would only be obligated to provide a new notice to Zynga after the expiration of the original 120-day period, if and only if Trader and Alpha entered into a new agreement to re-tender the shares. (Reply at 2 n.1 and at 6.) Upon review of the Exercise Agreement, the Court does not find a provision which supports this argument.

6

1  version of the TroyGould letter or a signed letter from another law firm; (2) Zynga would and
2  did refuse to transfer the shares unreasonably and contrary to its prior practice; or (3) Trader
3  could not obtain a satisfactory legal opinion letter opining that the transaction complied with
4  applicable federal and California securities law because the transaction did not, in fact, comply
5  with such laws. Depending on the reason for the failure, Alpha may or may not be able to
6  recover damages or require the transfer of the shares. At this point, both Trader and Zynga are
7  trying to keep Alpha in between a rock and a hard place - unable to plead the facts regarding
8  why the transaction failed because such facts are mostly within the exclusive knowledge of
9  Zynga and/or Trader and unable to recover from either Zynga or Trader without pleading such
10 facts.

11 Plaintiff alleges clearly and unequivocally, and it appears to be undisputed, that Trader
12 failed to give Zynga a final, complete legal opinion letter. What is legitimately in dispute at this
13 point, and thus, Plaintiff may plead facts in the alternative, is the reason why Trader failed to do
14 so. *American Int'l. Adjustment Co. v. Galvin*, 86 F.3d 1455, 1461 (7th Cir. 1996) ("a pleader
15 may assert contradictory statements of fact only when legitimately in doubt about the facts in
16 question."); *see also Violet Blue v. Johnson*, 2008 WL 941959, *7 (N.D. Cal. Apr. 7, 2008). As
17 stated above, it is not yet clear whether the fault lies with Trader, the fault lies with Zynga
18 because Zynga made it clear that it would have been futile to provide such a letter, or the fault
19 does not lie with either Trader or Zynga because the lawfulness of the trade under California
20 law is highly suspect. Because Alpha may plead conflicting facts in the alternative regarding
21 the reasons why the Trader failed to provide Zynga with the final, complete legal opinion letter
22 within the 120-day period, Alpha sufficiently states a claim for breach of contract against
23 Trader. Moreover, in light of the fact that the shares are now registered, thus alleviating a
24 significant obstacle to the share transfer, Alpha also alleges a breach based on Trader's failure
25 to provide a new notice to Zynga. Accordingly, the Court denies Trader's motion to dismiss.

26 Alpha also alleges facts in the alternative which, if true, are sufficient to hold Zynga
27 liable for the failure to transfer the shares. Alpha alleges that Zynga's conduct excused the
28 requirement of Trader to provide a final legal opinion. Under California law "[a]ny conduct or

7

declaration of a promisor evincing a clear intention to treat his contract as no longer binding is a legal prevention of performance." *Alphonzo E. Bell Corp. v. Listle*, 74 Cal. App. 2d 638, 645 (1946). According to Alpha, Zynga unreasonably and arbitrarily rejected the content of the draft legal opinion, even though the content was satisfactory and Zynga had accepted similar, or even less expansive, legal opinions in the past. (FAC, ¶¶ 6, 90-92, 100-103, Ex. J.) Zynga informed Trader that it would not accept an opinion which relied on statements by the parties that there was no solicitation or advertisement in connection with the sale. Trader contacted eight law firms in an effort to obtain a letter to satisfy Zynga's requirement. Each firm said it could not provide an opinion letter without relying on such statements and had never seen such a requirement before. (*Id.*, ¶ 90, Ex. J.) Alpha further alleges that Zynga told Trader that it would not let any transfer take place. (*Id.*, ¶ 66, Ex. K.) These alleged facts, if true, are sufficient to evince a clear intent by Zynga as treating the contract between it and Trader was no longer binding.

To state a claim for intentional interference with contractual relations, a plaintiff must show: (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) the defendant's intentional acts designed to induce breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. *Pacific Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990). Zynga argues that Alpha's claim fails because Alpha fails to allege any intentional acts by Zynga to induce a breach and because merely enforcing its own contractual rights cannot support a claim for interfering with a contract. As discussed above, the Court finds that Alpha has alleged intentional acts by Zynga which induced Trader not to perform under its contract with Alpha. Moreover, Alpha does not allege that Zynga's conduct was merely to enforce its contract with Trader. Alpha alleges that Zynga took steps to ensure that its contract with Trader would not be executed. Accordingly, the Court finds that Alpha has alleged sufficient facts to state a claim for intentional interference with contractual relations.

Next, Zynga argues that Alpha fails to state a claim under Delaware Commercial Code § 8-401 because this statute only creates a duty for an issuer to transfer shares if, among other

8

1  things, "the transfer does not violate any restriction imposed by the issuer." Del. Comm. Code
2  § 8-401(a)(5). According to Alpha's allegations, Trader did not violate any genuine restrictions
3  imposed by Zynga. Trader was ready, willing and able to provide a satisfactory legal opinion,
4  but Zynga arbitrarily and unreasonably rejected the content of it. Therefore, Alpha has alleged
5  facts which are sufficient to state a claim under Delaware Commercial Code § 8-401.

6  To state a claim for intentional interference with prospective economic advantage, a
7  plaintiff must show: (1) an economic relationship between the plaintiff and some third party,
8  with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of
9  the relationship; (3) intentional acts on the part of the defendant designed to disrupt the
10 relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff,
11 which is proximately caused by the acts of the defendant. *Korea Supply Co. v. Lockheed*
12 *Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003). To state a claim, the plaintiff must allege "that
13 the defendant engaged in an independently wrongful act" apart from the interference itself.
14 *Korea Supply*, 29 Cal. 4th at 1158. "[A]n act is independently wrongful if it is unlawful, that is,
15 if it is proscribed by some constitutional, statutory, regulatory, common law, or other
16 determinable legal standard." *Id.* at 1159. Although Zynga contends that Alpha fails to allege
17 that it engaged in any independently wrongful conduct, the Court has found that Alpha has
18 alleged conduct by Zynga's that is in violation of a Delaware statute. Therefore, Alpha has
19 sufficiently alleged this claim as well.

20 Zynga moves to dismiss Alpha's claim for declaratory relief on the ground that all of the
21 substantive claims upon which the declaratory relief claim is premised fail to state a claim.
22 Because the Court has found that Alpha has stated the underlying claims sufficiently, the Court
23 denies Zynga's motion as to Alpha's declaratory relief claim.

24 Lastly, Zynga argues that Alpha's claims are barred by Alpha's express waiver of
25 liability contained in the Representation Letter. The Representation Letter purports to release
26 Zynga from any liability to Alpha for the failure of the transaction for any reason. (FAC, Ex.
27 F.) Alpha counters that such waiver is unenforceble pursuant to California Civil Code § 1668.
28 This statute provides: "All contracts which have for their object, directly or indirectly, to

9

exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." Cal. Civ. Code § 1668. Pursuant to this statute, California courts have held, since 1872, "that the parties to a contract may not contract away liability for future intentional misconduct or for future violation of statutory law, whether or not intentional." *Morris v. Zusman*, --- F. Supp. 2d ---, 2012 WL 786838, *11 (D. Or. March 9, 2012). With respect to intentional torts, California courts have also consistently invalidated "exemptions from all liability." *Farnham v. Sup. Ct.*, 60 Cal. App. 4th 69, 74 (1997). In *Farnham*, the court upheld *a* limitation on liability for intentional wrongs against directors of a corporation where the plaintiff was able to and did recover from the corporation for the director's conduct. Significantly, the court held that the plaintiff was entitled to prove that the directors were acting as individuals, for their own self-interests, presumably to enable the plaintiff to recover against the directors directly despite the waiver of liability. *Id*. at 77-78. The court also noted that the corporation's insolvency could affect the enforceability of the waiver as well. *Id*. at 78 n.8. Thus, *Farnham* stands for the proposition that while some limitations on liability may be acceptable, California Civil Code § 1668 precludes a release that would prevent a plaintiff from recovering from anyone or any entity for an intentional wrong. *See McQuirk v. Donnelley*, 189 F.3d 793, 796-97 (9th Cir. 1999) (noting that *Farham* "stands for the proposition that § 1668 invalidates the total release of future liability for intentional wrongs.").

Here, if Zynga caused the transaction to fail, then the waiver would preclude Alpha from recovering from anyone for alleged intentional wrongs. Section 1668 invalidates such a waiver. Moreover, Alpha has alleged the violation of a statute, in addition to intentional torts. Section 1668 also precludes a waiver of statutory violations. *See Morris*, 2012 WL 786838, *11. Accordingly, the Court finds that the waiver is not enforceable against Zynga. Therefore, the Court denies Zynga's motion to dismiss.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Trader's motion to intervene, DENIES Zynga's and Trader's motions to dismiss, and GRANTS IN PART and DENIES IN PART

10

Trader's motion to strike. The Court GRANTS Trader's motion to strike motion with respect to Alpha's request for attorney's fees and DENIES the motion with respect to Alpha's request for a mandatory injunction.

The Court FURTHER ORDERS that the case management conference is CONTINUED to June 29, 2012. The parties shall file a revised joint case management statement by no later than June 22, 2012.

**IT IS SO ORDERED.**

Dated: June 12, 2012

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE